UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:23-cv-00477 |
| | ) | |
| WILLIAM BOWERS MANAGEMENT, LLC | ) | Judge Campbell |
| d/b/a WIDE OPEN MUSIC, ASH BOWERS, | ) | Magistrate Judge Frensley |
| JIMMIE ALLEN, and JOHN DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM IN SUPPORT OF
DEFENDANT BOWERS' MOTION TO DISMISS**

---

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Ash Bowers respectfully submits this Memorandum in Support of his Motion to Dismiss. For the reasons stated below, the Court should grant Defendant Bowers' Motion and dismiss Plaintiff's claims against him with prejudice.

Dated:  August  8, 2023          Respectfully submitted,

**NEAL & HARWELL, PLC**

/s/  *William J. Harbison II*
Aubrey B. Harwell, III (BPR # 17394)
William J. Harbison II (BPR # 33330)
Olivia R. Arboneaux (BPR # 40225)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
tharwell@nealharwell.com
jharbison@nealharwell.com
oarboneaux@nealharwell.com

*Counsel for Defendant Bowers*

# TABLE OF CONTENTS

**Page:**

I.      INTRODUCTION.................................................................................................1

II.     PLAINTIFF'S ALLEGATIONS ..........................................................................2

       *A.*    *Plaintiff's Work at William Bowers Management, LLC* ...........................2

       *B.*    *Allen's Alleged Abuse* ................................................................................2

       *C.*    *Defendant Bowers Had No Knowledge of Any Sexual Assault Until October 7, 2022* ..........................................................................................2

       *D.*    *Plaintiff's Lawsuit* ......................................................................................3

III.    LEGAL STANDARDS ........................................................................................4

       *A.*    *Rule 12(b)(6)* .............................................................................................4

       *B.*    *The Trafficking Victims Protection Reauthorization Act ("TVPRA")*....................4

IV.    ARGUMENT ........................................................................................................5

       *A.*    *Plaintiff's TVPRA Claim Fails as a Matter of Law (Count II)* .............................5

             1.    Plaintiff Has Not Plausibly Alleged Defendant Bowers Participated in a Commercial *Sex-Trafficking* Venture ...................................................5

             2.    Plaintiff Has Not Plausibly Alleged Defendant Bowers Knew or Should Have Known That Allen Was Engaged in a Commercial Sex-Trafficking Venture ......................................................................8

             3.    Plaintiff Has Not Plausibly Alleged Defendant Bowers "Knowingly Benefitted" From a Commercial Sex-Trafficking Venture..................................................................................................10

       *B.*    *Plaintiff's Claims Based on Conduct Occurring Before May 11, 2022, are Time-Barred* ........................................................................................12

       *C.*    *Plaintiff's Negligence-Based Claims Fail as a Matter of Law (Counts VI, VII, VIII, and X)* ........................................................................................13

             1.    Defendant Bowers Did Not Owe a Common-Law Duty to Protect Plaintiff From Allen's Alleged "Sexual Harassment or Abuse" ..............13

i

2.     Defendant Bowers Did Not Owe a Duty to Train or Educate Plaintiff About How to Avoid Allen's Alleged Sexual Misconduct .........15

3.     Plaintiff Does Not Have a Cognizable Claim for "Negligent Supervision" of Allen ................................................................................16

D.     *Plaintiff's IIED Claim Fails as a Matter of Law (Count IX)*................................17

**V.     CONCLUSION** ...........................................................................................................**19**

# TABLE OF AUTHORITIES

**Cases:**                                                                                  **Page:**

*Amerson v. Vulcan Materials Co.*,
    2011 WL 13308360 (E.D. Tenn. Mar. 31, 2011) ..................................................14

*Anderson v. Save-A-Lot, Ltd.*,
    898 S.W.2d 277 (Tenn. 1999)...............................................................................14

*Arreguin v. Sanchez*,
    398 F. Supp. 3d 1314 (S.D. Ga. 2019)...................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................4, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................4, 6

*Brown v. Regions Bank*,
    2019 WL 13297196 (W.D. Tenn. Nov. 14, 2019)..................................................18

*Cossairt v. Jarrett Builders, Inc.*,
    292 F. Supp. 3d 779 (M.D. Tenn. 2018)...............................................................17

*Doe v. Andrews*,
    2017 WL 3443598 (M.D. Tenn. Aug. 9, 2017) .....................................................15

*Doe v. Belmont Univ.*,
    367 F. Supp. 3d 732 (M.D. Tenn. 2019)...............................................................13

*Doe v. Catholic Biship for Diocese of Memphis*,
    306 S.W.3d 712 (Tenn. Ct. App. 2008) ...............................................................16

*Downs ex rel. Downs v. Bush*,
    263 S.W.3d 812 (Tenn. 2008)..............................................................................14

*Dunn v. Moto Photo, Inc.*,
    828 S.W.2d 747 (Tenn. Ct. App. 1991) ...............................................................17

*Evans v. Walgreen Co.*,
    2010 WL 11597173 (W.D. Tenn. Apr. 15, 2010)..................................................18

*Finley v. Kondaur Cap. Corp.*,
    909 F. Supp. 2d 969 (W.D. Tenn. 2012)...............................................................16

*Fritz v. Charter Twp. of Comstock*,
    592 F.3d 718 (6th Cir. 2010) ...............................................................................4

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019)............................................................6, 11

*Griggs v. National R.R. Passenger Corp.*,
    900 F.2d 74 (6th Cir. 1990) ...............................................................................13

*Hays v. Patton-Tully Transp. Co.*,
    844 F. Supp. 1221 (W.D. Tenn. 1993).............................................................13, 14

*Hensley Mfg. v. ProPride, Inc.*,
    597 F.3d 603 (6th Cir. 2009) ...............................................................................4

*Humes v. Ervin*,
    2007 WL 9710163 (W.D. Tenn. Mar 5, 2007) ...................................................17

*Johnson v. Jones*,
    2009 WL 902143 (Tenn. Ct. App. Apr. 2, 2009)...............................................12

*Johnson v. Woman's Hosp.*,
    527 S.W.2d 133 (Tenn. Ct. App. 1975) .............................................................17

*Kae v. Cumberland Univ.*,
    194 F. Supp. 3d 676 (M.D. Tenn. 2016).............................................................14

*Leach v. Taylor*,
    124 S.W.3d 87 (Tenn. 2004)...............................................................................18

*Lemon v. Williamson Cty. Sch.*,
    618 S.W.3d 1 (Tenn. 2019).................................................................................17

*Levy v. Franks*,
    159 S.W.3d 66 (Tenn. Ct. App. 2004) ...............................................................17

*Lourcey v. Estate of Scarlett*,
    146 S.W.3d 48 (Tenn. 2004)...............................................................................17

*Mulvey v. Perez*,
    2015 WL 5697318 (M.D. Tenn. Sept. 28, 2015)...............................................11

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018).................................................................8

*Pollard v. E.I. DuPont de Nemours Co.*,
213 F.3d 933 (6th Cir. 2000) .................................................................................18, 19

*Pollard v. E.I. DuPont de Nemours & Co.*,
532 U.S. 843 (2001).................................................................................................18

*Ramsbottom v. Ashton*,
2022 WL 106733 (M.D. Tenn. Jan. 11, 2022)................................................. *passim*

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) .....................................................................................4

*Riddle v. Lowe's Home Centers, Inc.*,
802 F. Supp. 2d 900 (M.D. Tenn. 2011).................................................................13

*Robinson v. Weathers*,
2010 WL 11578749 (M.D. Tenn. Jan. 5, 2010).......................................................14

*Rogers v. Louisville Land Co.*,
367 S.W.3d 196 (Tenn. 2012).................................................................................17

*United States v. Afyare*,
632 F. App'x 272 (6th Cir. 2016) ....................................................................6, 7, 8

*United States v. Cain*,
583 F.3d 408 (6th Cir. 2009) .....................................................................................7

**Statutes/Rules:**

Fed. R. Civ. P. 12................................................................................................4, 11, 12

18 U.S.C. § 1591................................................................................................. *passim*

18 U.S.C. § 1595................................................................................................. *passim*

Tenn. Code Ann. § 28-3-104 ....................................................................................12

**Other:**

Restatement (Second) of Torts § 46..........................................................................17

# I. INTRODUCTION

This is a highly sensitive case involving serious allegations. But while Plaintiff *might* have pled viable claims against her alleged abuser, she has not done so against her former employer's founder, Defendant Ash Bowers. As explained below, the Court should dismiss Plaintiff's claims against Defendant Bowers with prejudice for multiple reasons:

***First***, the Court should dismiss Plaintiff's claim for participation in a commercial sex-trafficking venture (Count II) against Defendant Bowers because: (1) Plaintiff fails to allege facts showing Defendant Bowers knowingly participated in a commercial "sex-trafficking venture"; (2) Plaintiff fails to demonstrate that Defendant Bowers knew or should have known that Allen was allegedly engaged in a commercial "sex-trafficking venture"; and (3) Plaintiff has not plausibly alleged Defendant Bowers "knowingly benefitted" from a commercial "sex-trafficking venture."

***Second***, many of Plaintiffs allegations concern events that occurred well beyond the one-year statute of limitations; all conduct that predates May 11, 2022, is therefore time-barred.

***Third***, Plaintiff's negligence-based claims (Counts VI, VII, VII, and X) fail as a matter of law because: (1) Defendant Bowers did not owe any common law duty to protect Plaintiff from Allen's alleged sexual abuse, which was not reasonably foreseeable; (2) Defendant Bowers did not owe any duty to train or educate Plaintiff about how to avoid Allen's alleged sexual misconduct; and (3) Plaintiff does not have a cognizable claim for negligent supervision of Allen.

***Fourth***, Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") fails as a matter of law because Defendant Bowers' alleged conduct is not sufficiently outrageous to state a claim for relief.

Accordingly, the Court should grant Defendant Bowers' Motion and dismiss Plaintiff's Complaint against him with prejudice.

## II.      PLAINTIFF'S ALLEGATIONS

**A.    Plaintiff's Work at William Bowers Management, LLC**

Defendant Bowers is the founder of William Bowers Management, LLC d/b/a Wide Open Music ("WBM"),[1] a Nashville-based artist management company. [D.E. 1, Compl. at ¶ 1]. In February 2020, WBM hired Plaintiff as a "Day-to-Day Artist Manager." [*Id.* at ¶ 20]. In April 2020, Defendant Bowers introduced Plaintiff to Defendant Jimmie Allen, a country music artist.[2] [*Id.* at ¶¶ 1, 27]. After being assigned as the "Day-to-Day Artist Manager" for Allen, Plaintiff's job duties involved "attending events where Allen had to appear or perform as WBM's representative" and "planning and execution of Allen's publicity, global release schedules, promos, social media plans, press, marketing, and touring." [*Id.* at ¶ 24].

**B.    Allen's Alleged Abuse**

Plaintiff alleges that Allen began sexually harassing her in May 2020. [*Id.* at ¶¶ 5, 31-33]. In March 2021, Allen allegedly sexually assaulted Plaintiff. [*Id.* at ¶¶ 34-35]. This sexual assault and abuse allegedly continued and escalated throughout Plaintiff's tenure as Allen's Day-to-Day Manager. [*Id.* at ¶¶ 43-45].

**C.    Defendant Bowers Had No Knowledge of Any Alleged Sexual Assault Until October 7, 2022**

Plaintiff's Complaint does not allege that Defendant Bowers knew of any alleged sexual assault until October 7, 2022. Instead, Plaintiff alleges Defendant Bowers only knew the

---

[1]    As set forth in WBM's Business Entity Disclosure, Wide Open Music is not the trade name of William Bowers Management, LLC. [D.E. 19].

[2]    Defendant Bowers was Allen's "Principal Manager." [D.E. 1, Compl. at ¶ 23].

2

following about Allen's conduct prior to that date: (1) Allen "was known to push inappropriate sexual boundaries"; (2) Allen "was promiscuous but 'harmless'"; (3) in April 2021, Allen opened a pornography website on Plaintiff's computer; (4) in May 2021, Allen's uncle made inappropriate remarks about Plaintiff; (5) in July 2021, Plaintiff told him "that Allen was difficult to work with"; (6) in March 2022, Plaintiff told him "how she felt humiliated by Allen"; and (7) on October 4, 2022, Plaintiff told him "she could not put up with Allen's abuse any longer, and asked that she be reassigned." [D.E. 1, Compl. at ¶¶ 3, 28, 38-39, 41, 47, 52, 55].

Critically, Plaintiff <u>did not "disclose[] the details" of Allen's alleged abuse to Defendant Bowers until October 7, 2022</u>. [*Id.* at ¶ 56]. That same day, Plaintiff was allegedly placed on leave, worked from home, and presumably had no further contact with Allen. [*Id.* at ¶¶ 57-58]. Put another way, the Complaint does allege that Defendant Bowers knew of any alleged sexual assault (or any sex acts between Allen and Plaintiff) until that date.

## D.     Plaintiff's Lawsuit

On May 5, 2023, Plaintiff filed the above-styled Complaint seeking to hold Defendant Bowers liable for Allen's alleged actions. [*Id.*]. Seeking an unspecified amount of damages, Plaintiff's Complaint asserts six interrelated (and duplicative) causes of action against Defendant Bowers: (1) violation of 18 U.S.C. § 1595 for "participation in a venture engaged in sex trafficking"; (2) gross negligence; (3) negligence; (4) "negligent failure to warn, train, or educate"; (5) IIED; and (6) negligent infliction of emotional distress ("NIED").[3] [*Id.* at ¶¶ 68-74, 88-116].[4]

---

[3]     Plaintiff asserts the same claims against WBM. [D.E. 1, Compl. at ¶¶ 68-74, 88-116].

[4]     Although the Complaint's caption includes "John Does 1-100," it contains no allegations against any unknown actors.

# III.    LEGAL STANDARDS

## A.    Rule 12(b)(6)

Dismissal pursuant to Rule 12(b)(6) is proper where a complaint lacks sufficient facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hensley Mfg. v. ProPride, Inc.*, 597 F.3d 603, 609 (6th Cir. 2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. That is, while a plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded facts must be accepted as true, a "formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "[A] legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal quotations and citations omitted).

## B.    The Trafficking Victims Protection Reauthorization Act ("TVPRA")

The TVPRA is a criminal sex-trafficking statute that can give rise to civil claims. *See* 18 U.S.C. §§ 1591(a), 1595(a). *See also Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1325 n.4 (S.D. Ga. 2019). Specifically, § 1591(a) provides as follows:

> Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by a means a person; or

> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Additionally, the term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e).

Section 1595(a), the TVPRA's civil remedy provision, provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys['] fees.

18 U.S.C. § 1595(a).

Thus, The TVPRA confers criminal and civil liability upon "whoever knowingly . . . entices, harbors, transports, provides, obtains, or maintains by any means a person" with the knowledge that "means of force, threats of force, fraud [or] coercion described in (e)(2)" would be employed to "cause the person to engage in a commercial sex act." 18 U.S.C. §§ 1591(a), 1595. It also establishes civil "venture liability" for anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter . . . ." 18 U.S.C. § 1595(a).

5

# IV.  ARGUMENT

## A.  Plaintiff's TVPRA Claim Fails as a Matter of Law (Count II)

As suggested above to state a claim for participating in a commercial sex-trafficking venture, a plaintiff must allege facts—beyond mere conclusions—allowing the Court to plausibly infer that the defendant: (1) knowingly benefited financially; (2) from participation in a commercial sex trafficking venture; (3) while knowing (or in reckless disregard of the fact) that means of force, fraud, or coercion would be used to cause the trafficked person to engage in a commercial sex act.  *See, e.g.*, *Ramsbottom v. Ashton*, 2022 WL 106733, at *9 (M.D. Tenn. Jan. 11, 2022) (dismissing claim for venture liability under 18 U.S.C. § 1595).

But to state this claim, Plaintiff must have supplied "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556).  What is required here—and what is missing—are factual allegations of participation that render a violation of 18 U.S.C. § 1591(a)(2) by Defendant Bowers plausible on its face.  Moreover, Plaintiff's Complaint does not contain any specific factual allegations that plausibly allege Defendant Bowers knew of, or participated in, Allen's alleged violations of 18 U.S.C. § 1591.

### 1.  Plaintiffs Has Not Plausibly Alleged Defendant Bowers Participated in a Sex-Trafficking Venture

"The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities engaged by the sex traffickers that do not further the sex-trafficking aspect of their venture."  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (citing *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (noting that 18 U.S.C. § 1591(a)(2) "targets those who participate in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship.")).  "In other

6

words, there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship." *Id.*

The Sixth Circuit has cautioned that the "venture" required as a prerequisite for TVPRA liability must be a *sex-trafficking* venture—not a "venture" generally. *See United States v. Afyare*, 632 F. App'x 272, 284-85 (6th Cir. 2016) ("[T]he venture must promote the offense underlying the conspiracy (here, sex trafficking) . . . mere association in a gang or some other endeavor (criminal or otherwise) is not enough."); *but see Ramsbottom*, 2022 WL 106733, at *10 (declining to apply *Afyare* but dismissing TVPRA claim on other grounds). To hold otherwise and allow any venture in which sexual harassment or assault allegedly occurred to serve as the basis for TVPRA liability would produce adverse, unintended consequences: it would "create a 'vehicle to ensnare conduct that the statute never contemplated.'" *Afyare*, 632 F. App'x at 286 (citing *United States v. Cain*, 583 F.3d 408, 414 (6th Cir. 2009)).

In *Afyare*, the Sixth Circuit cautioned against creating TVPRA liability against the "hypothetical defendant who joins a soccer team with some sex traffickers," but "turn[s] a blind eye" to those sex traffickers' activities. *Id.* Thus, simply being on a soccer team, or joining in any other generic venture with alleged commercial sex traffickers, would not establish TVPRA beneficiary liability. *Id.* This is because the venture was not a *sex-trafficking* venture—even if some individuals involved in the venture also engaged in sex trafficking. *Id.* Holding this type of hypothetical defendant liable would be quintessential "guilt by association" and turn the TVPRA into a powerful, dangerous tool that Congress did not intend. *See id.* at 285.

Much like *Afyare*'s hypothetical, Plaintiff has alleged only that Defendant Bowers engaged in a "venture" with Allen—not a *sex-trafficking* venture. [D.E. 1, Compl. at ¶¶ 27-23].

7

Her allegation that Defendant Bowers "benefited financially from his participation in the cover-up and venture because it ensured that Allen continued to perform" is insufficient to state a beneficiary claim under the TVPRA and is exactly the type of generic venture—like a soccer player who joins a team funded by sex traffickers—that the Sixth Circuit has held insufficient to state a claim. *See Afyare*, 632 F. App'x at 286.

### 2. Plaintiff Has Not Plausibly Alleged Defendant Bowers Knew or Should Have Known that Allen Was Engaged in a Sex-Trafficking Venture

A TVPRA claim also requires a plaintiff plausibly allege the defendant had three separate types of knowledge with respect to a sex-trafficking venture: (1) knowledge as to a benefit received from trafficking; (2) knowledge as to "assisting, supporting, or facilitating" trafficking; and (2) knowledge that the plaintiff was either a minor or subject to force. *See* 18 U.S.C. §§ 1595(a); 1591(a)(2); 1591(e)(4). Association alone cannot establish liability—instead, knowledge and "some participation in the sex trafficking act itself must be shown." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *see also Afyare*, 632 F. App'x at 286 ("We agree with the district court and find that § 1591(a)(2) targets those who *participate in sex trafficking*; it does not target [those] who turn a blind eye to the source of their financial sponsorship.") (emphasis added).

Plaintiff has failed properly to allege that Defendant Bowers had actual knowledge or "should have known" as to any of the statutorily required elements. Plaintiff alleges that Defendant Bowers "knew or should have known that Allen was engaging in acts that constitute sex trafficking in violation of 18 U.S.C. § 1591 and was using [WBM] to facilitate those acts." [D.E. 1, Compl. at ¶ 71]. This purely tautological statement proves nothing, and the remaining allegations in Plaintiff's Complaint suffer from the same flaw. The Complaint does not identify any specific action by Allen (or anyone else) that Defendant Bowers witnessed that should have

clued him into the fact that Allen was "trafficking" Plaintiff under the "should have known" standard. The mere fact that Allen was allegedly involved in commercial sex trafficking and that Defendant Bowers was engaged in a venture with Allen—managing and promoting Allen's music career—is not sufficient to give rise to liability against Defendant Bowers under 18 U.S.C. § 1595. Moreover, Defendant Bowers is not alleged to have had any involvement in, or knowledge of, Allen's alleged acts of sexual assault (at least until after the fact). The Complaint explains in great detail the steps *Allen* allegedly took to sexually assault Plaintiff, but nothing about Defendant' Bowers supposed knowledge. *See, e.g.*, *Ramsbottom*, 2022 WL 106733, at *11 ("However, the plaintiffs have not pointed to any actual facts that support their assertion that [the defendant] "should have known" that Ashton was engaged in sex trafficking at all . . . .").

In *Ramsbottom*, this Court dismissed a similar TVPRA claim against the management company, promotion company, and two other companies affiliated with a musician accused of sexually grooming and assaulting underage girls. *See generally, id.* While the complaint alleged there was a running joke between the musician and his associates he "would have to find a date at a high school dance," this Court found that allegation insufficient to plausibly infer that the musician engaged in sex trafficking with the plaintiffs. *Id.* at *19-21. Likewise, allegations that the musician used company resources to lure underage girls to engage in commercial sex acts were not enough. *Id.* at *20-21. This Court reasoned that although the musician may have been involved in sex trafficking, and the defendant companies were engaged in and benefitted from their ventures with him, that relationship was not sufficient to give rise to venture/participant liability. *Id.* at *11. With regard to the management company, specifically, the Court held that "[t]he mere fact that [the musician] was allegedly involved in sex trafficking and that [the company] was engaged in a venture with [him] from which it clearly benefitted—managing [his]

music career and promoting large music festivals—is not sufficient to give rise to liability against [the management company] under § 1595." *Id.* The same reasoning applies here.

Further, under *Ramsbottom*, Plaintiff's claim still fails even if she had fully disclosed every detail of Allen's alleged sex trafficking during her meeting with Defendant Bowers on October 7, 2022. All of the alleged sexual misconduct occurred prior to that date, and she was no longer interacting with Allen. In *Ramsbottom*, the claimed period of sex trafficking took place from 2012 to 2014, and the plaintiffs alleged that the management company became aware of the musician's misconduct in 2016. *Id.* at *11. The Court held that this allegation "does nothing to establish [the management company's] knowledge (or negligent disregard) of [the musician's] sexual misconduct while it was taking place from 2012 through 2014, as the plaintiffs allege." *Id.* at *11. Similarly, assuming for the sake of argument that Defendant Bowers learned about all of Allen's alleged sex trafficking for the first time on October 7, 2022, this does not mean it is liable to Plaintiff under Section 1595—Plaintiff does not claim that she was victimized by Allen after this date, and by the end of the month she was no longer working with WBM. [D.E. 1, Compl. at ¶¶ 57–60].

### 3. *Plaintiff Has Not Plausibly Alleged Defendant Bowers "Knowingly Benefitted" From a Sex-Trafficking Venture*

Unlike direct perpetrators of sex trafficking, participants are liable only if they knowingly benefited (financially, or by receiving anything of value) from a venture engaged in commercial sex trafficking. 18 U.S.C. §§ 1591(a)(2), 1595(a). Attempting to satisfy this element, Plaintiff alleges in conclusory fashion that Defendant Bowers "benefitted financially from [his] participation in the cover-up and venture because it ensured that Allen continued to perform, ensuring that [WBM] and Bowers continued to make money off Allen's stature and performances." [D.E. 1, Compl. at ¶ 72]. This is not enough.

To survive a motion to dismiss, a complaint requires more than bare legal conclusion that the defendant benefitted from a sex-trafficking venture. *See Mulvey v. Perez*, 2015 WL 5697318, at *2 (M.D. Tenn. Sept. 28, 2015) ("Legal conclusions are not entitled to the presumption of truth."). Instead, a plaintiff must provide *specific factual support* to demonstrate that a defendant "knowingly benefited" from the venture. *See Geiss*, 383 F. Supp. 3d at 168-69. In *Geiss*, for example, the court granted the defendants' Rule 12(b)(6) motion after finding that the plaintiff "pleaded no facts that would plausibly support the conclusion that the sex trafficker [Harvey Weinstein] provided benefits to the defendants *because of* defendants' facilitation of his sex trafficking." *Id.* at 169-70. Thus, merely pleading that the defendants benefited from Weinstein's continued employment with their companies and that he generated revenue for them was insufficient to establish a "knowing benefit." *Id.*

This case is no different. Much like *Geiss*, Plaintiff makes only the conclusory allegation that Defendant Bowers "benefitted financially from [his] participation in the cover-up and venture because it ensured that Allen continued to perform, ensuring that WBM and Bowers continued to make money off Allen's stature and performances." [D.E. 1, Compl. at ¶ 72]. This allegation cannot "plausibly support the conclusion that [Allen] provided benefits to [WBM] *because of* [its] facilitation of his sex trafficking." *Id.* at 169-70.

In sum, the Complaint contains no non-conclusory allegations that implicate Defendant Bowers under the TVPRA. Plaintiff fails to allege facts that, if true, would establish that Defendant Bowers knew or should have known that Allen was engaged in a sex-trafficking venture. The Court should grant Defendant Bowers' Motion on these grounds.

**B.** **Plaintiff's Claims Based on Conduct Occurring Before May 11, 2022, are Time-Barred**

Plaintiff's Complaint contains few specifics on timing, but most of her allegations concern events occurring from May 2020 through March 2022. She alleges Allen's sexual harassment began in May 2020, and describes multiple incidents that similarly occurred well before the limitations period: (1) the first time Allen allegedly sexually assaulted her (March 2021); (2) the time Allen allegedly opened a pornography website on her computer (April 2021); (3) the inappropriate remarks from Allen's uncle (May 2021); (4) her conversation with Defendant Bowers in which her "distress was noticeably visible" (July 2021); (5) her collapse in Hawaii (February 2022); and (6) her meeting with Defendant Bowers in which he told her to "confront[] Allen 1-on-1" (March 2022). [D.E. 1, Compl. at ¶¶ 3, 31, 34, 38, 41, 47, 51, 53]. She further alleges Allen "continued to sexually harass and assault" her after her meeting with Defendant Bowers on March 6, 2022, but does not allege any other *specific* incidents until her October 2022 communications with WBM and October 26 termination. [*Id.* at ¶¶ 54-60].

Tennessee has a one-year statute of limitations for personal tort actions. *See* Tenn. Code Ann. § 28-3-104(a)(1); *see also Johnson v. Jones*, 2009 WL 902143, at *1 (Tenn. Ct. App. Apr. 2, 2009) (applying Tenn. Code Ann. § 28-3-104(a)(1) to negligence claims); *Harris v. Regions Fin. Corp.*, 2018 WL 3578513, at *5 n.3 (Tenn. Ct. App. July 25, 2018) (applying Tenn. Code Ann. § 28-3-104(a)(1) to IIED and NIED claims).

Plaintiff filed her Complaint on May 11, 2023. [D.E. 1, Compl.]. Thus, any of Defendant Bowers' allegedly tortious conduct that occurred before May 11, 2022, is time-barred and should be dismissed. Thus, to the extent Plaintiff has stated a personal tort claim against Defendant Bowers (which as explained below she has not), the only conduct that could be actionable against Defendant Bowers is that which occurred after May 11, 2022.

**C.**     **Plaintiff's Negligence-Based Claims Fail as a Matter of Law (Counts VI, VII, VIII, and X)**

Plaintiff has brought multiple negligence-based claims against Defendant Bowers.[5]  Each requires Plaintiff plausibly allege that: (1) Defendant Bowers owed her a duty of care; (2) Defendant Bowers breached that duty; (3) Plaintiff was injured; (4) Defendant Bowers' breach of duty was the cause in fact of Plaintiff's injuries; and (5) Defendant Bowers' breach of duty was the proximate (or legal) cause of Plaintiff's injuries.  *See, e.g.*, *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 763-67 (M.D. Tenn. 2019).  But although Plaintiff asserts multiple theories of negligence, all fail because she has not alleged facts on which the Court could find that Defendant Bowers owed her a duty of care.  *See Riddle v. Lowe's Home Centers, Inc.*, 802 F. Supp. 2d 900, 905 (M.D. Tenn. 2011) ("Whether a defendant owes a duty of care to a plaintiff is a question of law to be determined by the courts.").

> **1.**     ***Defendant Bowers Did Not Owe a Common-Law Duty to Protect Plaintiff From Allen's Alleged "Sexual Harassment or Abuse"***

Plaintiff's claims for negligence and gross negligence allege Defendant Bowers "owed [her] a duty to use due care to ensure her safety and freedom from sexual harassment or abuse while interacting with [WBM's] clients."  [D.E. 1, Compl. at ¶¶ 89, 97].  <u>There is no such common-law duty</u>.

"Sexual harassment has never been a common law tort; as a cause of action, it is a statutory creation."  *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1223 (W.D. Tenn. 1993) (citing *Griggs v. National R.R. Passenger Corp.*, 900 F.2d 74, 75 (6th Cir. 1990)); *see also Griggs*, 900 F.2d at 75 ("[T]he [racial and sexual] discrimination alleged by the plaintiff creates

---

[5]     As outlined above, these negligence-based claims are gross negligence (Count VI), negligence (Count VII), negligent failure to warn/train/educate (Count VIII), and NIED (Count X).  [D.E. 1, Compl. at ¶¶ 88-106, 113-16].

federal liability only because of Title VII. *It was not a tort at common law*." (emphasis added));

*Robinson v. Weathers*, 2010 WL 11578749, at *4 (M.D. Tenn. Jan. 5, 2010) (acknowledging that there are "no cases which would support" a common law sexual harassment claim in Tennessee). Indeed, a robust federal and state statutory scheme exists to protect victims of workplace sexual harassment or discrimination. *See Anderson v. Save-A-Lot, Ltd.*, 898 S.W.2d 277, 283 (Tenn. 1999) (noting that "federal and state civil rights statutes were promulgated to provide a remedy for sexual harassment injuries"). There is no *common law* duty to protect workers from sexual harassment.

Of course, courts have recognized that sexual harassment may include "independently actionable" tortious conduct, such as battery. *See Hays*, 844 F. Supp. at 1223. Plaintiff's inclusion of such allegations against Allen, however, does not mean she has plausibly alleged Defendant Bowers owed her a duty "to ensure her safety and freedom from sexual harassment or abuse." [D.E. 1, Compl. at ¶¶ 89, 97]. "A duty of care is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Kae v. Cumberland Univ.*, 194 F. Supp. 3d 676, 681 (M.D. Tenn. 2016) (quoting *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008)). The foreseeability of the harm—in this case, Allen's alleged sexual violence—"is the foundation of liability" in determining whether a legal duty exists. *See Amerson v. Vulcan Materials Co.*, 2011 WL 13308360, at *2 (E.D. Tenn. Mar. 31, 2011).

As discussed above, Plaintiff admits she never reported Allen's alleged sexual *abuse* until October 7, 2022, and did not work with Allen after that. [D.E. 1, Compl. at ¶¶ 56-57]. The only incident she allegedly reported to Defendant Bowers contemporaneously were the inappropriate remark from Allen's uncle and Allen's access of a pornographic website on her computer. [*Id.* at

14

¶¶ 38-39, 41]. These incidents—coupled with Defendant Bowers' alleged awareness that Allen "pushe[d] inappropriate sexual boundaries" [*id.* at ¶ 3]—cannot sustain any inference that alleged assault, battery, or false imprisonment was foreseeable. Foreseeability must be "built on something more than just mere possibilities." *Doe v. Andrews*, 2017 WL 3443598, at *13 (M.D. Tenn. Aug. 9, 2017) (finding that although "a sexual assault at a fraternity party—or any party—is foreseeable, in the sense that it does not defy the rules of logic and commons sense to think that it might happen," "foreseeability for purposes of identifying duties under tort law requires more than that").

It is *possible* that a person who makes inappropriate sexual remarks or shows unwanted sexual images may escalate to violent assault, just as it is *possible* that sexual assault may occur at a fraternity party (or any party). The law, however, requires "something more than mere possibilities"—and Plaintiff's allegations do not support the inference that a reasonable person in Defendant Bowers' position could have foreseen that Allen would sexually assault Plaintiff, videotape his encounters, or allegedly use that as blackmail. There are no allegations that Defendant Bowers knew of <u>any</u> instances of Allen sexually assaulted anyone (let alone Plaintiff) until after they allegedly occurred. In fact, Plaintiff alleges that Defendant Bowers told her Allen was "harmless"—presumably not a word he would have used if he knew or suspected Allen was a violent sexual predator. [D.E. 1, Compl. at ¶ 3].

Because Defendant Bowers owed no duty to protect Plaintiffs against harms he could not have reasonably foreseen, her attempt to impose such a duty fails as a matter of law. The Court should dismiss Plaintiff's negligence-based claims on these grounds.

15

## 2. Defendant Bowers Did Not Owe a Duty to Train or Educate Plaintiff About How to Avoid Allen's Alleged Sexual Misconduct

Although Plaintiff's Complaint contains a claim for "Negligent Failure to Warn, Train, or Educate," there does not appear to be such a tort in Tennessee. [D.E. 1, Compl. at ¶¶ 103-106].[6] Plaintiff does allege, however, that Defendant Bowers owed a duty "to properly warn, train or educate [her] about how to avoid such a particular risk that Allen posed of sexual misconduct." [D.E. 1, Compl. at ¶¶ 104-05]. Put another way, Plaintiff claims Defendant Bowers should have trained her on how to avoid Allen's intentional, tortious misconduct. But as discussed above, such misconduct was not reasonably foreseeable to Defendant Bowers. Moreover, Defendant Bowers is aware of no legal authority imposing duty to train or educate workers on "avoiding" a third party's intentional torts and/or criminal actions.

## 3. Plaintiff Does Not Have a Cognizable Claim for "Negligent Supervision" of Allen

Although Plaintiff does not bring a separate "negligent supervision" claim, she does allege that Defendant Bowers was "negligen[t] in supervising Allen and Allen's interactions with [her]." [D.E. 1, Compl. at ¶ 98]. To the extent this is construed as a claim for negligent supervision, it fails as a matter of law. Negligent supervision claims only apply to supervision of *employees*, and require proof "that the employer had knowledge of the employee's unfitness for the job." *Finley v. Kondaur Cap. Corp.*, 909 F. Supp. 2d 969, 979 (W.D. Tenn. 2012) (quoting *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008). Because Allen was WBM's *client*—not its *employee*—Defendant Bowers cannot be liable for negligently "supervising" him.

---

[6] The phrase "warn, train, or educate" does not appear in any Tennessee decision, either state or Federal.

**D.      Plaintiff's IIED Claim Fails as a Matter of Law (Count IX)**

A claim for IIED requires a plaintiff plausibly allege the defendant's conduct was: (1) intentional or reckless; (2) so outrageous that it is not tolerated by civilized society; and (3) resulted in serious mental injury to the plaintiff. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). Deciding the second element is a question of law. *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 22 (Tenn. 2019) (citing Restatement (Second) of Torts § 46, cmt. h).

Plaintiff's Complaint fails to plausibly allege that Defendant Bowers engaged in outrageous conduct of the rare kind necessary to sustain an IIED claim. "'The standard for outrageous conduct is high, indeed,' and cases finding conduct sufficient to support an [IIED] claim are few and far between." *Cossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 789 (M.D. Tenn. 2018) (quoting *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004)).

Indeed, Tennessee recognizes IIED liability only in the most extreme situations. *See, e.g.*, *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004) (finding IIED liability where defendant told plaintiff his wife was having a seizure, shot her in the head as the plaintiff was calling 911, turned to face the plaintiff, then shot himself in the head); *see also Humes v. Ervin*, 2007 WL 9710163, at *2 (W.D. Tenn. Mar 5, 2007) (finding IIED liability where conduct included waiving fake handguns at plaintiffs and holding them hostage for 30 minutes as part of a training exercise plaintiffs thought was real); *Levy v. Franks*, 154 S.W.3d 66, 84 (Tenn. Ct. App. 2004) (finding IIED liability where conduct included death threats and gunshots fired near plaintiff's home); *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 753-54 (Tenn. Ct. App. 1991) (finding IIED liability for conduct where defendant told female customer her film could not be developed, kept nude photographs for himself, and showed them to his friends); *Johnson v.*

*Woman's Hosp.*, 527 S.W.2d 133, 140 (Tenn. Ct. App. 1975) (finding IIED liability where defendant showed mother of stillborn infant preserved in jar of formaldehyde).

Plaintiff has not alleged that Defendant Bowers engaged in any such intentional, outrageous activities, claiming only that he failed to investigate Allen and did not "take any action to protect Plaintiff." [D.E. 1, Compl. at ¶¶ 42, 48, 53]. And because Plaintiff admittedly "stay[ed] silent" about most of Allen's conduct, Defendant Bowers only knew of the inappropriate comment from Allen's uncle and the incident in which Allen viewed pornography on Plaintiff's computer. [*Id.* at ¶¶ 39, 41, 44, 46]. These facts cannot sustain the inference that Defendant Bowers' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004).

Indeed, courts have held that the alleged failure to act on isolated reports of sexual harassment or racial discrimination cannot sustain an IIED claim. For example, a court in the Western District of Tennessee granted a Rule 12(b)(6) motion to dismiss an IIED claim where the plaintiff alleged that the defendant bank "failed to prevent [her manager's] discriminatory conduct 'following reports of sexual harassment.'" *Brown v. Regions Bank*, 2019 WL 13297196, at *4 (W.D. Tenn. Nov. 14, 2019). Similarly, in another Western District case, the Court dismissed an IIED claim against Walgreens where the plaintiff had reported two instances of sexual harassment. *See Evans v. Walgreen Co.*, 2010 WL 11597173, at *3 (W.D. Tenn. Apr. 15, 2010). Both *Brown* and *Evans* distinguished the circumstances in those cases from those in *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 947 (6th Cir. 2000), *rev'd sub nom. on other grounds by Pollard v. E.I. DuPont de Nemours & Co.*, 532 U.S. 843 (2001), where the Sixth Circuit found that "[i]naction by an employer, or another actor in a position to exercise

control, in the face of continuous, deliberate, degrading treatment of another may rise to the level of [IIED]." In *Pollard*, the plaintiff submitted evidence that her managers knew she had been subjected to years of "daily, consistent harassing behavior" from coworkers, including sabotaging her work, refusing to speak to her, and jeopardizing her safety. *Id.* at 937-42. Under this unique fact pattern, the Sixth Circuit found her employer could be liability for IIED based on management's inaction.

Plaintiff's allegations bear no resemblance to *Pollard*. While she has alleged Allen's abuse was pervasive, the facts do not support any inference that Defendant Bowers was remotely aware of their severity. Plaintiff alleges that Defendant Bowers should have "investigated to determine *whether and to what extent* [she] was being harmed by Allen" [D.E. 1, Compl. at ¶¶ 42, 48 (emphasis added)]—not that Defendant Bowers knew she *was* being harmed and stood by in "silent approval." *Pollard*, 213 F.3d at 947. On these facts, Plaintiff has failed to state a plausible IIED claim against Defendant Bowers.

## V. <u>CONCLUSION</u>

Although Plaintiff's allegations are serious, they do not give rise to civil liability against Defendant Bowers. For the foregoing reasons, the Court should grant Defendant Bowers' Motion to Dismiss and dismiss Plaintiff's claims against him with prejudice.

Dated:        August 8, 2023                    Respectfully submitted,

**NEAL & HARWELL, PLC**

/s/  *William J. Harbison II*
Aubrey B. Harwell, III (BPR # 17394)
William J. Harbison II (BPR # 33330)
Olivia R. Arboneaux (BPR # 40225)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
tharwell@nealharwell.com
jharbison@nealharwell.com
oarboneaux@nealharwell.com

*Counsel for Defendant Bowers*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, a true and correct copy of the foregoing has been

served on the following via the Court's electronic filing system:

| ***Counsel for Plaintiff:*** | ***Counsel for Defendant WBM:*** |
|---|---|
| FEGAN SCOTT LLC<br>Elizabeth A. Fegan (admitted *pro hac vice*)<br>130 S. Wacker Drive, 24th Floor<br>Chicago, IL 60606<br>(312) 264-0100<br>beth@feganscott.com<br><br>Yujin Choi<br>2301 Blake Street, Suite 100<br>Denver, CO 80205<br>yujin@feganscott.com<br><br>SPRAGENS LAW PLC<br>John T. Spragens (BPR # 31445)<br>311 22nd Ave. N.<br>Nashville, TN 37203<br>(615) 983-8900<br>john@spragenslaw.com | BRADLEY ARANT BOULT CUMMINGS LLP<br>Samuel D. Lipshie (BPR # 9538)<br>John P. Rodgers (BPR # 30342)<br>Caroline D. Spore (BPR # 36214)<br>1600 Division Street, Suite 700<br>P.O. Box 340025<br>Nashville, TN 37203<br>(615) 252-2332<br>slipshie@bradley.com<br>jrodgers@bradley.com<br>cspore@bradley.com |
| ***Counsel for Defendant Allen:*** | |
| BAKER DONELSON<br>Jonathan J. Cole (BPR # 16632)<br>Katelyn R. Dwyer (BPR # 39090)<br>1600 West End Ave., Suite 2000<br>Nashville, TN 37203<br>(615) 726-7335<br>jcole@bakerdonelson.com<br>kdwyer@bakerdonelson.com | |

/s/  *William J. Harbison II*
William J. Harbison II