IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:23-cv-00477 |
| ) | Judge Campbell |
| WILLIAMS BOWERS MANAGEMENT ) | Judge Frensley |
| LLC D/B/A WIDE OPEN MUSIC, ASH ) | |
| BOWERS, JIMMIE ALLEN, and ) | |
| JOHN DOES 1-100, ) | |
| ) | |
| Defendants. ) | |

## ORDER

### I. INTRODUCTION

Plaintiff Jane Doe is the former Day-to-Day Manager for Defendant Jimmie Allen, a multi-platinum recording artist and songwriter in country music. Docket No. 1, p. 1. Defendant Wide Open Music ("WBM"[1])—a Nashville-based artist management company founded by Defendant Ash Bowers—represented Mr. Allen as a client and employed Ms. Doe as his Day-to-Day Manager. *Id.* In May 2023, Ms. Doe filed this suit against WBM, Mr. Bowers, and Mr. Allen, alleging that Mr. Allen "manipulated and used his power over [Ms. Doe]'s job to sexually harass and abuse her," and that when she disclosed this information to Mr. Bowers in her request to be reassigned, "[WBM] placed [Ms. Doe] on leave and then fired her on October 26, 2022." *Id.* at 1–2.

This matter is before the Court upon Ms. Doe's "Plaintiff's Motion for Protective Order to Proceed Under a Pseudonym" (Docket No. 32), in which Ms. Doe requests permission to (1)

---

[1] Wide Open Music is the trade name for Williams Bowers Management, LLC. Ms. Doe refers to this Defendant in her Complaint as "WOM" (an acronym for Wide Open Music), but for purposes of this Order, the Court will refer to this Defendant as "WBM" (an acronym for Williams Bowers Management, LLC).

proceed in this suit under a pseudonym, and (2) allow redactions of her "name, signature, and other potentially personal identifying information." Docket No. 32, p. 2. Ms. Doe has also filed a Memorandum in Support (Docket No. 33). In their Responses to Ms. Doe's Motion, Bowers (Docket No. 44) and WBM (Docket No. 48) state that they do not take a position on Ms. Doe's request to proceed pseudonymously, but they argue that Ms. Doe's proposed protective order is impermissibly vague and provides for overly harsh, unconstitutional sanctions in the event of its violation.[2] Mr. Allen has filed a Response in Opposition to Ms. Doe's Motion (Docket No. 45), in which he agrees with the assertions of Bowers and WBM and further argues that Ms. Doe's allegations "do not entitle her to the exceptional relief of proceeding under a pseudonym." Docket No. 45, p. 1. Ms. Doe has filed a Reply (Docket No. 50).

For the reasons set forth below, Ms. Doe's Motion (Docket No. 32) is **GRANTED**.

## II. LAW AND ANALYSIS

### A. Request to Proceed Under a Pseudonym

#### 1. The *Porter* Factors

The Federal Rules of Civil Procedure require that federal lawsuits state the names of the parties. Fed. R. Civ. P. 10(a), 17(a)(1). In exceptional cases, the court may grant an order allowing a plaintiff to proceed under a pseudonym. To obtain such an order, a plaintiff must show that her "privacy interests substantially outweigh the presumption of open judicial proceedings." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004).

---

[2] As discussed *infra*, Ms. Doe clarifies in her Reply that she "agrees with Defendants that the proposed Protective Order should not have an automatic contempt provision." Docket No. 50, p. 1, n.1. Ms. Doe also notes that the Protective Order can define "identifying information" as Ms. Doe's "first and last name, social security number, date of birth, home address, and other material from which her identity is ascertainable, such as social media account names or photographs." *Id.*

In *Doe v. Porter*, the Sixth Circuit identified a non-exhaustive list of factors (which the parties refer to as the "*Porter* factors") that courts may consider in determining whether "special circumstances" exist to justify an exception to the rule, including:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* (citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981) (internal quotation marks omitted)). The court may exercise its discretion to consider other factors that may be relevant in a particular case, keeping in mind that the applicable standard is whether "a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings." *Id.* Other factors that may be considered include whether the plaintiff would risk suffering injury if identified and whether the defendant would be prejudiced by the plaintiff's proceeding anonymously. *See, e.g.*, *Plaintiff v. Wayne State Univ.*, No. 20–cv–11718, 2021 U.S. Dist. LEXIS 12675, 2021 WL 243155, at *7 (E.D. Mich. Jan. 25, 2021); *Doe v. City of Detroit*, No. 18–cv–11295, 2018 U.S. Dist. LEXIS 118787, 2018 WL 3434345, at *1 (E.D. Mich. Jul. 17, 2018).

Ms. Doe asserts that *Porter* factor 2 supports her request to proceed under a pseudonym. Docket No. 33, pp. 5–6. She argues that the litigation of this claim will require her "to disclose the manner in which she alleges [Mr.] Allen raped her when she was incapacitated, and the various ways he sexually assaulted and abused her person – information of the utmost intimacy." *Id.* at 6. Specifically, she states that these disclosures would include descriptions of "repeated verbal and physical sexual harassment, public groping, forcible sexual assault, as well as threats of blackmailing and termination to cause submission." *Id.* Tying her true name to these disclosures, Ms. Doe argues, would inflict further trauma and prolong her mental health recovery. *See id.* at 1–

3

2. As to factors 1, 3, and 4, Ms. Doe is not challenging governmental activity, she does not intend to violate the law, and she was not a minor during the relevant time period in this case.

Mr. Allen maintains that none of the *Porter* factors weigh in favor of Ms. Doe proceeding under a pseudonym. Docket No. 45, p. 5. He asserts that Ms. Doe's reliance on factor 2 is "misplaced," as "sexual assault allegations, standing alone, do not warrant the use of pseudonyms, and neither do fear of embarrassment or public humiliation."[3] *Id.* at 5, 8–9. He also argues that Ms. Doe's argument for anonymity is undermined by her "willingness to discuss her allegations in the news media and continued reference to her relationship with [Mr.] Allen on social media."[4] *Id.* at 9.

The Court finds that in this instance, the *Porter* factors weigh in favor of the use of a pseudonym. Of the four factors, Ms. Doe satisfies only the second: prosecution of the instant suit will compel her to disclose information "of the utmost intimacy" (details about the nature and circumstances of the alleged sexual assault, sexual abuse, and coercion to take Plan B). *See* Docket No. 33, p. 6. But this Court has granted motions to proceed under a pseudonym based solely on the utmost intimacy factor. *See, e.g.*, *Doe v. FedEx Ground Package System, Inc.*, No. 3:21-cv-

---

[3] To bolster this argument, Mr. Allen attempts to distinguish the present circumstances from those in *Doe v. Tenn. Bd. of L. Examiners*, No. 3:22-CV-138-TRM-JEM, 2022 WL 2951447 (E.D. Tenn. July 25, 2022). Docket No. 45, p. 7. In doing so, he states that Ms. Doe "conveniently failed to cite the Court's complete quote, which included an important qualifier: '[I]nformation of the utmost privacy concern matters of a sensitive and highly personal nature, *such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families*.' . . . None of these circumstances apply to [Ms. Doe]'s allegations in this case." *Id.* But Ms. Doe alleges in her Complaint that Mr. Allen sexually assaulted her, then "insist[ed] she take Plan B as soon as possible" and "supervised [Ms. Doe] while she took the medication." Docket No. 1, pp. 6–7. Plan B is an emergency contraceptive that helps prevent pregnancy within 72 hours after unprotected sex; thus, contrary to Mr. Allen's assertion, the "birth control" and "abortion" elements of the quote above *are* implicated in this case.

[4] Mr. Allen argues that Ms. Doe's "behavior in bringing attention to her suit demonstrates that her efforts to remain anonymous may be for ulterior, impermissible purposes." Docket No. 45, p. 8. But in arguing this, he directs this Court to a single out-of-circuit case with a pseudonym motion factor analysis that differs from the *Porter* factor analysis used in this jurisdiction. *See Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (weighing six factors to determine whether a pseudonym is justified, including "whether the party seeking to sue pseudonymously has illegitimate ulterior motives"). Although the *Porter* factors are explicitly non-exhaustive, the Court is not persuaded to alter its analysis by Mr. Allen's reference to a *single* out-of-circuit case.

00395, 2021 U.S. Dist. LEXIS 209324, 2021 WL 5041286 (M.D. Tenn. Oct. 29, 2021). In *FedEx Ground*, two plaintiffs sued their employer, alleging that their direct supervisor repeatedly raped, sexually assaulted, and sexually harassed the plaintiffs during work hours on multiple occasions. *Id.* at *1–10. One plaintiff was permitted to proceed pseudonymously while the other was not. *Id.* at *28–29. The plaintiff who was permitted had indicated to the court that:

> she has suffered "severe emotional trauma" as a result, for which she has undergone and continues to undergo psychiatric treatment and to take medication for depression and PTSD. She indicates that having her name appear publicly in court filings and news stories, specifically, would cause her to worry for the rest of her life if the people she meets know about her history, causing her to continuously relive the shame and trauma of the events. Doe also states that she is "very fearful of being exposed publicly" and will consider dropping the lawsuit if not permitted to proceed pseudonymously . . . . In addition, Doe attests that she has not shared with her partner all of what she alleges Perez did to her, for fear of damaging her relationship with her partner, as well as her relationships with his family and her own. This is a much more significant factor than simply a generalized fear of embarrassment.

*Id.* at *22–23 (internal citations omitted). The court distinguished these circumstances from those of the plaintiff who was not permitted to proceed under a pseudonym:

> [She] does not allege that she takes medication or that she has sought psychiatric treatment in connection with the sexual assaults she experienced. She simply states that she does not want her family members and her young daughter to know what happened and that it would "really upset" her for her daughter to find out. She states that she would be "uncomfortable" pursuing this case if she is not permitted to remain anonymous, because "it would be embarrassing" for her. She does not indicate that she would drop, or consider dropping, her claims if she is not allowed to proceed under a pseudonym.

*Id.* at *10 (internal citations omitted).

Here, Ms. Doe's circumstances align more closely with the former. Mr. Allen is correct that "fear of embarrassment and public humiliation" do not, standing alone, warrant the use of a pseudonym (Docket No. 45, pp. 8–9); however, the circumstances detailed in Ms. Doe's filings go

above and beyond that standard (*see* Docket No. 33; Docket No. 50). Among other allegations in the Complaint, Ms. Doe alleges that Mr. Allen "openly and regularly sexually assaulted and sexually harassed" her; took her virginity without her consent—causing her to "bleed vaginally"—and coerced her to take an emergency contraceptive afterward; "raped her in private while choking her;" videotaped some of their sexual encounters to blackmail her into silence; and shoved his hand down her pants in public on multiple occasions. Docket No. 1, pp. 6–8. Since the alleged events in the Complaint took place, Ms. Doe has been diagnosed with anxiety, depression, and post-traumatic stress disorder ("PTSD"); she currently takes medication to treat those diagnoses; and she participates in a weekly intensive therapy program. Docket No. 33, p. 1; Docket No. 32-1, p. 2. If she cannot proceed pseudonymously, Ms. Doe states that she would "worry for the rest of [her] life that the people [she] work[s] with will know intimate details of the abuse [she] endured but did not choose, and for which [she] lost [her] job," and that she would "face the scrutiny of the Nashville community that [she] ha[s] called home since [she] was eight years old." Docket No. 32-1, p. 3. Ms. Doe's treating Licensed Mental Health Therapist of over a year opined in her signed Declaration that forcing Ms. Doe to disclose her identity publicly will negatively affect Ms. Doe's mental health, will cause secondary trauma (including PTSD retraumatization), and will set back Ms. Doe's mental health recovery. Docket No. 32-2, pp. 1–3. Further, Ms. Doe has informed the Court that if her request to proceed under a pseudonym is denied, she would consider dropping the lawsuit due to the trauma that would follow her name being made public. Docket No. 33, p. 2; Docket No. 32-1, p. 3.

Each of these concerns cannot be viewed in a vacuum. This is not a case in which allegations of sexual assault, the fear of embarrassment, or the fear of facing stigma in one's career "stand[] alone." Docket No. 45, p. 5. Taken in the aggregate, the evidence Ms. Doe presents to the

Court demonstrates that "she has been severely traumatized and would be further traumatized, not simply by pursuing litigation, but by having her name associated publicly with this case." *FedEx Ground*, 2021 WL 5041286, at *9. Thus, although Ms. Doe has only satisfied *Porter* factor 2, she has provided sufficient evidence that the Court should nevertheless allow her to proceed pseudonymously.

### 2. Additional Factors

#### i. Prejudice to the Defendant

In addition to the *Porter* factors, a court may consider whether the defendant in a case may be prejudiced if the plaintiff is permitted to proceed under a pseudonym. *Ramsbottom v. Ashton*, No. 3:21–cv–00272, 2021 U.S. Dist. LEXIS 119989, 2021 WL 2651188, at *5 (M.D. Tenn. June 28, 2021). Courts addressing prejudice "have examined 'difficulties in conducting discovery,' the 'reputational damage to defendants,' and the 'fundamental fairness of proceeding anonymously,' among other considerations." *Id.* (quoting *Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021) (citations omitted)).

Mr. Allen asserts that concealing the real name of Ms. Doe could deprive Mr. Allen and the Court "'of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses.'" Docket No. 45, p. 10 (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006)). But the list of potential witnesses in this case that could come forward with "valuable information" is calculable and finite. *Id.* According to the Complaint, Ms. Doe worked as the WBM Day-to-Day Artist Manager for Mr. Allen from February 2020 to October 2022. Docket No. 1, pp. 4, 10. During this period, she was the sole occupant of this role and interacted with a finite group of individuals in the entertainment industry on behalf of Mr. Allen and WBM. *Id.* at 4–5 ("[Ms. Doe] worked

full-time for [WBM], attending events where [Mr.] Allen had to appear or perform as [WBM]'s representative and Day-to-Day Manager. [WBM] required that [Ms. Doe] handle, among other things, the planning and execution of [Mr.] Allen's publicity, global release schedules, promos, social media plans, press, marketing, and touring."). Additionally, Ms. Doe was often required to travel alone with Mr. Allen. Docket No. 45-1, p. 4. Given the specificity of her position, revealing Ms. Doe's actual name is unnecessary for those possessing "valuable information" to come forward. *See Del Rio*, 241 F.R.D. at 156. The unique title of her position provides ample identification.

Additionally, Mr. Allen argues that he will be prejudiced by "reputational damage" arising from Ms. Doe's use of a pseudonym. Docket No. 45, p. 11. But Mr. Allen appears to have already suffered said "reputational damage," in his words, "as a result of Ms. Doe's allegations." Docket No. 45, p. 11. As a result of the allegations, Mr. Allen argues that he "has been dropped by his publicist, suspended by his new artist management company, lost lucrative endorsement deals, had several performance contracts cancelled, and was ultimately dropped by his record label." *Id.* And since Variety Magazine published an article detailing the allegations, Mr. Allen "has been unable to book musical performances, promotional appearances, or television appearances, and his reputation and relationships within the entertainment industry have been severely damaged." *Id.* This "reputational damage" appears to have resulted from the nature of the allegations and the nature of Ms. Doe's employment in relation to Mr. Allen—not from Ms. Doe's use of a pseudonym. *See* Docket No. 45-1, p. 2 ("Country Star Jimmie Allen Sued for Assault and Sexual Abuse by Former Manager"). Disclosing Ms. Doe's real identity would not reverse the consequences already endured by Mr. Allen due to these accusations. Such an action would merely support a "tit-for-tat" argument—a stance this Court is unwilling to endorse.

After balancing these considerations, the Court finds that this factor favors granting Ms. Doe's motion.

### ii. Risk of interference with Ms. Doe's mental health treatment and recovery

Courts may also consider the risk of mental harm to plaintiffs that would result from public identification. *See Ramsbottom*, 2021 WL 2651188, at *6. Plaintiffs alleging mental harm must "base their allegations . . . on more than just mere speculation" and provide some "link between public disclosure of plaintiff's name and the described psychological risk." *Id.* (quoting *Rapp*, 537 F. Supp. 3d at 528-29).

To bolster her argument for risk of mental harm, Ms. Doe has submitted the Declaration of Elizabeth Porter (Docket No. 32-2), a Licensed Mental Health Therapist. Ms. Porter is the Founder and President of Nashville-based Entertainment Health Services, and she has been Ms. Doe's treating therapist for over a year. Docket No. 32-2, p. 1. She has treated "many clients who were survivors of sexual assault." *Id.* As relevant here, she attests as follows:

> 5.   . . . . The statements in [Ms. Doe's] Declaration are consistent with statements she has made to me during our weekly therapy sessions. Moreover, her statements are consistent with the experiences of sexual assault survivors I have treated.
>
> 6.   Based on my education and experience, a foundation of the healing process and therapeutics for sexual assault survivors is establishing a feeling of safety. Establishing a feeling of safety includes helping clients regain control and ownership over the story of what happened to them. One very important part of regaining ownership and control is for the victim to determine with whom she shares her story.
>
> 7.   Sexual assault victims often experience primary trauma from the initial assault and additional[] [] secondary trauma from what happens after the assault, such as reporting to the police or filing a lawsuit. Secondary trauma is one reason why many sexual assault victims either never report what happened to them or delay in reporting their assaults.

> 8. In my professional experience and based on my professional training, however, there is a difference between what therapists call "natural impact," or participating in the legal process by re-telling what happened, on the one hand, and secondary trauma associated with the victim losing control of the process or caused by being named publicly, on the other hand.
>
> 9. Although victims will experience some level of natural impact by re-telling the experience in legal proceedings, this can often be part of the healing process if the client chooses to pursue it in her own way. Secondary trauma and PTSD re-traumatization are worse when patients lose control over their story or when they are named publicly, particularly where they are concerned about people knowing that they were sexual assault victims.
>
> 10. If the victim is identified publicly, then she (like Jane Doe) often worries that everyone she encounters knows about or is talking about what happened to her, even if they are not. This is especially true when the victim, like Jane Doe here, continues to work in the same industry as her abuser and fears for her safety.
>
> 11. My opinion is that such secondary trauma, including PTSD re-traumatization, will negatively affect Jane Doe's mental health and set back her recovery. This should be avoided if possible.
>
> 12. From a clinical perspective, the secondary trauma described above is distinct from the natural impact a sexual assault survivor experiences due to re-telling the event as part of treatment or because she is participating in the legal process. The secondary trauma I am describing is related specifically to the victim's general feelings of safety and her interactions with others moving forward, and is not related to having to revisit the initial assault or abuse by talking about what happened.

*Id.* at 1–3. Ms. Porter's testimony serves to draw a distinction between two separate forms of trauma: (1) the trauma that Ms. Doe suffered as a direct result of Mr. Allen's alleged sexual harassment and abuse, and (2) the secondary trauma that Ms. Doe would likely suffer, not as a result of bringing this lawsuit per se, but as a result of having to pursue her claims publicly under her own name.

Mr. Allen contends that Ms. Doe "urges this Court to establish the precedent that any sexual assault victim will necessarily suffer a secondary trauma from having to litigate a case they initiate

and is, thus, entitled to proceed pseudonymously." Docket No. 45, p. 16. But Mr. Allen woefully misconstrues Ms. Doe's argument, cherry-picks the testimony of Ms. Porter, and fails to recognize that this Court has granted previous motions to proceed under a pseudonym where the testifying therapist had not even treated the plaintiff. *See, e.g.*, *FedEx Ground*, 2021 WL 5041286, at *8 (granting one of the plaintiffs' motions to proceed pseudonymously based partly on evidence "that Jane Doe suffered significant trauma from the alleged sexual assaults and rape and that requiring her to pursue this lawsuit in her own name would have a substantial likelihood of causing secondary trauma of the type described by [the consulting therapist] . . . ."). Mr. Allen attempts to align the testimony in the present case to that of the plaintiffs and their treating therapists in both *Del Rio* and *Ramsbottom*, in which sufficient evidence was not presented as to a connection "between the disclosure of [the plaintiffs'] identit[ies] and the expected exacerbation of [their psychological] symptoms." Docket No. 45, p. 15 (quoting *Ramsbottom*, 2021 WL 2651188, at *7). But *Del Rio* is a non-binding out-of-circuit case, and neither *Del Rio* nor *Ramsbottom* involves allegations of rape.[5] As such, the circumstances of the present case align more closely with those of Jane Doe in *FedEx Ground*—a case in which this Court was presented with testimony regarding the risk of mental harm to the plaintiff and determined that this factor "weigh[ed] strongly in favor of permitting [Ms.] Doe to proceed pseudonymously." 2021 WL 5041286, at *8.

The Court finds that the evidence presented is sufficient to establish that Ms. Doe suffered significant trauma from the alleged sexual harassment and abuse and that requiring her to pursue this lawsuit in her own name would have a substantial likelihood of causing secondary trauma of the type described by Ms. Porter. In considering both Ms. Porter's testimony and Ms. Doe's

---

[5] *Del Rio* involves "allegedly egregious acts of police brutality and abuse," which included allegations of unwanted fondling, kissing, and touching. 241 F.R.D. at 155. *Ramsbottom* involves allegations of illegal sex trafficking and possession of child pornography. 2021 WL 2651188, at *1.

11

Case 3:23-cv-00477    Document 59    Filed 11/07/23    Page 11 of 15 PageID #: 453

testimony about her mental health described *supra*,[6] the Court finds that this factor weighs strongly in favor of permitting Ms. Doe to proceed pseudonymously.

### iii. Potential chilling effect on other similarly situated plaintiffs

Ms. Doe argues that allowing her to proceed pseudonymously would "'forestall a chilling effect on future litigants who may be similarly situated." Docket No. 50, p. 4 (quoting *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022)). She states that requiring her to disclose her true name "will deter other victims of sexual misconduct of public figures from coming forward and enable public figures to take advantage of and continue to harm others without fear of prosecution." Docket No. 33, p. 9. Instead, she argues that "the public has a strong interest in protecting the identity of [Ms. Doe]," as allowing her to proceed under a pseudonym "will encourage other survivors of sexual misconduct to come forward without the risk of humiliation, harassment, retaliation, and unwanted public attention." *Id.*

Mr. Allen contends that "[t]he public's legitimate interest in knowing litigants' identities is 'magnified' when, as here, the plaintiff brings claims against a public figure." Docket No. 45, p. 13 (quoting *Ramsbottom*, 2021 WL 2651188, at *8). He avers that Ms. Doe's concession that her allegations involve a "significant public interest" tilt the scales in favor of Mr Allen's "right to openly confront the serious charges [Ms. Doe] makes against him," and that "[f]airness requires that [Ms. Doe] be prepared to stand behind her charges publicly." *Id.* Given the detail in which Ms. Doe recounts the factual basis for her claims in the Complaint, this consideration is not insignificant. *See* Docket No. 1, pp. 6–8. "Information and allegations that are highly sensitive and of a personal nature can flow both ways." *Ramsbottom*, 2021 WL 2651188, at *5 (citing *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019)).

---

[6] *See* pp. 5–6.

Despite its limited weight, this factor favors granting the motion. On the one hand, the importance of avoiding a potential chilling effect on similarly situated plaintiffs in the abstract usually will not displace the strong presumption of judicial openness in federal courts. But on the other hand, a decision precluding Ms. Doe from proceeding under a pseudonym may discourage other victims of sexual assault from bringing their claims forward. Because Ms. Doe has not provided the Court with information that would suggest a risk of a significant chilling effect, the Court will give this factor limited weight.

### 3. All factors, taken together, weigh in favor of granting Ms. Doe's request to proceed under a pseudonym.

Considering all of the *Porter* factors and additional factors that Ms. Doe raises in support of her argument, the Court finds that Ms. Doe has "established the existence of special circumstances that warrant overriding that presumption in favor of allowing her to proceed pseudonymously." *FedEx Ground*, 2021 WL 5041286, at *9 (citing *Signature Mgmt. Team, LLC v. Doe*, 323 F. Supp. 3d 954, 957 (E.D. Mich. 2018)). As a result, the Court will not return to its starting "premise that proceeding pseudonymously is the exception, rather than the rule." *Doe v. Franklin Cnty., Ohio*, 2013 U.S. Dist. LEXIS 134843, 2013 WL 5311466, at *2 (S.D. Ohio Sept. 20, 2013). In this case, an exception is warranted.

### B. Revisions to the Proposed Protective Order

Mr. Allen, WBM, and Mr. Bowers each argue that the terms of Ms. Doe's proposed protective order (Docket No. 32-3) are impermissibly vague and provide for unconstitutional sanctions in the event of their violation. *See* Docket No. 44, pp. 1–2; Docket No. 45, pp. 17–18; Docket No. 48, p. 1. Specifically, the Defendants oppose (1) the proposed order's failure to define the phrase "identifying information" and (2) the proposed order's automatic contempt provision.

*Id.* Additionally, the Defendants suggest that the use of a pseudonym should be restricted exclusively to Ms. Doe and not extended to include her family members *Id.*

In her Reply, Ms. Doe suggests that the phrase "identifying information" should cover her "first and last name, social security number, date of birth, home address, and other material from which her identity is ascertainable, such as social media account names or photographs." Docket No. 50, p. 1, n.1. She also concedes that the proposed order should not have an automatic contempt provision. *Id.*

The Court finds that Ms. Doe's suggested revisions adequately address the Defendants' concerns. The Court also finds that the use of a pseudonym should extend to Ms. Doe's family members as well, as their true names constitute "other material from which [Ms. Doe's] identity is ascertainable." Docket No. 50, p. 1, n.1. Limiting the use of a pseudonym to Jane Doe without doing the same for her family members would, for all intents and purposes, defeat the purpose of allowing her to proceed pseudonymously: preventing a connection between Ms. Doe's identity and the present case. Revealing the full names of Ms. Doe's family members would reveal Ms. Doe's last name, and due to the specificity of Ms. Doe's employment with WBM, her identity could then be easily determined by anyone with access to the public filings in this matter. Further, the Defendants have not provided any legal authority supporting their argument that the use of a pseudonym should not extend to Ms. Doe's family members, and the Court is not aware of any such authority.

Consequently, the proposed protective order should be revised to include Ms. Doe's suggested revisions: (1) limiting the scope of "identifying information" to include Ms. Doe's first and last name, social security number, date of birth, home address, and other material from which

her identity is ascertainable, such as social media account names or photographs; and (2) removing the automatic contempt provision in Paragraph 7.

### III. CONCLUSION

Under the circumstances, the Court finds compelling reasons to protect Ms. Doe's identity. Therefore, Ms. Doe's Motion (Docket No. 32) is **GRANTED**, and she may proceed in this action under the pseudonym Jane Doe.

Within **TEN DAYS** of entry of this Order, Ms. Doe **MUST** file a revised Protective Order in compliance with the Court's findings above.

**IT IS SO ORDERED.**

Jeffery S. Frensley
United States Magistrate Judge