IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:23-cv-00477 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| WILLIAM BOWERS | ) | |
| MANAGEMENT, LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court are motions to dismiss filed by Defendants William Bowers Management, LLC ("WBM") and Ash Bowers ("Bowers") (collectively, "Defendants").[1] (Doc. Nos. 18, 37). Plaintiff responded to each motion (Doc. Nos. 42, 43), and the Defendants filed replies (Doc. Nos. 49, 53).

For the reasons stated herein, the motions to dismiss will be **GRANTED in part**, and **DENIED in part**.

### I. BACKGROUND

Plaintiff Jane Doe initiated this action through the filing of a verified complaint on May 11, 2023. (Doc. No. 1). The following factual allegations are drawn from the verified complaint and are assumed to be true for purposes of the Court's consideration of the motions to dismiss.

Plaintiff worked for Defendant WBM as the "Day-to-Day Manager" for WBM client Jimmie Allen ("Allen"), a country-music songwriter and recording artist. (*Id*., ¶¶ 1-2). When

---

[1] Plaintiff also brought claims against Jimmie Allen and John Does 1-100. The claims against Jimmie Allen were resolved by agreement (*see* Doc. Nos. 78-80), and John Does 1-100 have not been named. Accordingly, for purposes of these motions, the Court's reference to "Defendants" refers only to Defendants William Bowers Management and Ash Bowers.

Plaintiff was assigned to Allen, Bowers, the founder of WBM warned her that Allen was "known to push inappropriate sexual boundaries" and implied that it was "inevitable that Allen would make sexual advances" toward her. (*Id*. ¶ 3).

Beginning in May 2020, Allen openly made sexual comments to Plaintiff about her appearance, her "youth" and "innocence," and asked her questions about her sexual experience. (*Id*. ¶ 5). Over time, Allen began touching and hugging Plaintiff, including grabbing her breasts and buttocks, and putting his hands down her pants in public. (*Id*. ¶¶ 33, 43). In March 2021, Allen sexually assaulted Plaintiff while she was incapacitated. (*Id*. ¶¶ 8, 34-36). For the next 18 months, despite her attempts to decline Allen's sexual abuse, Allen manipulated and used his power over Plaintiff's job to sexually harass, rape, and abuse her. (*Id*. ¶¶ 9, 38, 43, 44, 51, 54).

Plaintiff alleges Bowers and WBM were aware of Allen's history and that he was likely engaging in harassing and abusive behavior toward her. (*Id*. ¶ 10). Plaintiff expressed that she was uncomfortable working with Allen and that she found him "difficult to work with," and at least one third party told WBM and Bowers that Allen was engaging in inappropriate behavior. (*Id*. ¶¶ 10, 39, 47, 52). Neither WBM nor Bowers investigated whether Allen was abusing Plaintiff. (*Id*. ¶ 10, 48, 53). Instead, it was made clear to Plaintiff that she would lose her job if she complained. (*Id*. ¶ 48-50, 53).

By October 2022, Plaintiff was severely depressed and anxious and considered suicide as a result of Allen's conduct. (*Id*. ¶¶ 11, 54). On October 4, 2022, Plaintiff told Bowers that Allen raped and sexually abused her, that she could not put up with his abuse any longer, and asked to be reassigned. (*Id*.¶¶ 11, 55). WBM did not reassign her. (*Id*. ¶ 12). Instead, Plaintiff was placed on leave and then fired. (*Id*. ¶¶ 12, 57-60).

As relevant to the pending motions to dismiss, Plaintiff brings claims against William Bowers Management, LLC, and Ash Bowers for violations of 18 U.S.C. §§ 1591, 1595 (participation in a venture engaged in sex trafficking) (Count II), negligence (Counts VI, VII, VIII), intentional infliction of emotional distress (Count IX), and negligent infliction of emotional distress (Count X). (Compl., Doc. No. 1).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012). In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

### A. 18 U.S.C. §§ 1591, 1595 (Count II)

Plaintiff sues WBM and Bowers for participation in a venture engaged in sex trafficking under 18 U.S.C. § 1595. Section 1595 provides a civil remedy to a victim of violations of various federal laws criminalizing conduct such as slavery, forced labor, human trafficking, and sex trafficking. Plaintiff alleges that these Defendants participated in a sex trafficking venture, as prohibited by 18 U.S.C. § 1591.

The Court begins, as it must, with the language of the statute. Section 1595 states, "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) …" 18 U.S.C. § 1595. To analyze Plaintiff's claim under section 1595 against Defendants WBM and Bowers, an analysis of statutory terms is in order.

First, the "violation of this chapter" Plaintiff alleges is sex trafficking in violation of 18 U.S.C. § 1591.[2] Section 1591(a)(2) addresses "whoever knowingly … benefits financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)." 18 U.S.C. § 1591(a)(2). So, to determine if these Defendants fall under section 1591(a)(2), the Court must also look at section 1591(a)(1), which, in relevant part, targets "whoever knowingly … recruits, entices, harbors, transports, provides, obtains, advertises,

---

[2] Plaintiff sued Defendant Jimmie Allen for sex trafficking, identifying him as a perpetrator. As previously stated, *supra* n.1, Plaintiff and Allen reached a settlement of all claims.

maintains, patronizes, or solicits by any means a person … to cause the person to engage in a commercial sex act …" 18 U.S.C. § 1591(a).

Section 1591 includes several definitions important to this analysis. "Commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). The term "participation in a venture" means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). "Venture" means "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

In sum, the claim against Defendants must be based on allegations that Defendant Allen knowingly recruited, enticed, or solicited Plaintiff to cause Plaintiff by some means identified in the statute "to engage in a sex act, on account of which anything of value is given to or received by any person" and that WBM and Bowers "knowingly" benefitted from or attempted or conspired to benefit from "knowingly assisting, supporting, or facilitating" Defendant Allen's alleged sex trafficking.

With that understanding of section 1591 in mind, the Court turns to the allegations in the Complaint, accepting those allegations as true and drawing reasonable inferences in Plaintiff's favor. The Complaint sets forth numerous incidents of Defendant Allen's alleged actions, but as for the knowledge of WBM and Bowers, the list is considerably shorter. Bowers warned Plaintiff that Allen "was known to push inappropriate sexual boundaries" and was "promiscuous but harmless." WBM failed to warn or protect Plaintiff from "the extreme sexual harassment, abuse, grooming, and manipulation she would endure to keep her job." Allen's makeup assistant reported to Bowers an incident involving Allen opening a pornographic website in Plaintiff's presence in April 2021. (Doc. No. 1, ¶¶ 38-39). In May 2021, Plaintiff reported an inappropriate statement

5

purportedly made by Allen's uncle and relayed to Plaintiff by Allen. (*Id*. ¶ 41). WBM and Bowers knew that Allen sexually harassed women and failed to protect Plaintiff from sexual harassment. (*Id*. ¶¶ 42, 48). In July 2021, when Plaintiff reported that Allen was "difficult to work with," Bowers and another WBM executive told Plaintiff to limit her travel with Allen and to "tolerate Allen's misconduct." (*Id*. ¶¶ 47-50). At this point, according to the Complaint, Plaintiff had not reported to Bowers or WBM any sex act by Allen. In March 2022, Plaintiff told Bowers she felt "humiliated by Allen." (*Id*. ¶ 52). On October 4, 2022, Plaintiff told Bowers she "could not put up with Allen's abuse any longer, and asked that she be reassigned." (*Id*. ¶ 55). Three days later, Plaintiff disclosed to Bowers and another WBM employee "the details of Allen's abuse and was placed on leave." (*Id*. ¶¶ 56-57).

Accepting the allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, a fair reading of the Complaint draws into question the viability of Count II against Defendants WBM and Bowers. As noted above, they had "to know or should have known" that Allen was engaged in sex trafficking of Plaintiff. As this Court observed when construing the phrase "knew or should have known," under section 1591, this results in specification of "an objective standard of negligence." *Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2022 WL 106733, at *9 (M.D. Tenn. Jan 11, 2022). Nothing in the allegations concerning the knowledge of Bowers or WBM before October 7, 2022 – after which Plaintiff did not work with Allen – could reasonably infer that they should have known about a "commercial sex act" involving Plaintiff (or Allen), even if Plaintiff can establish that the alleged sex acts between Plaintiff and Allen were "on account of which anything of value is given to or received by any person," 18 U.S.C. § 1591, which issue the Court need not reach at this juncture.

6

Instead, construing the allegations in a light most favorable to Plaintiff, at most Bowers and WBM knew that Allen acted inappropriately, pushed sexual boundaries with women with whom he worked, engaged in sexual harassment, and was engaging in misconduct. No allegation in the Complaint could be fairly read to place Bowers or WBM on notice of a commercial sex act. Similarly, while the allegations accepted as true may lead to the conclusion that a reasonable person "should have known" that Allen sexually harassed Plaintiff – for which there are remedies outside of section 1591 and 1595 – the allegations fail to plead facts that would suggest a reasonable person "should have known" that Allen used any of the means set forth in section 1591(a) to "cause [Plaintiff] to engage in a commercial sex act." Without sufficient facts to support knowledge by Bowers and/or WBM, Plaintiff's claim fails as a matter of law. *See Ramsbottom*, 2022 WL 106733, at *9. Put another way, section 1591(a)(2) would require Defendants WBM and Bowers to know (or should have known) that Defendant Allen was causing Plaintiff to engage in a "sex act, on account of which anything of value is given or received by another person" and know (or should have known) that they benefitted from knowingly assisting, supporting, or facilitating Defendant Allen's illegal activity.

The cases cited by Plaintiff do not require a different conclusion. Plaintiff cites to *Ramsbottom* for the proposition that Defendants' argument regarding Count II has been rejected by this Court. (*See* Doc. No. 42 at 4-5 (citing *Ramsbottom*, 2022 WL 106733, at * 28-33)). However, that part of Judge Trauger's opinion addressed a Tennessee statutory claim, not a claim under 18 U.S.C. § 1595. Further, like here, Judge Trauger concluded that managing an artist who may have engaged in actionable conduct under section 1591 does not equate to liability arising under section 1591(a)(2). *Ramsbottom*, 2022 WL 106733, at * 11.

Plaintiff also relies on *Geiss v. Weinstein Co. Holdings, LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019), *Ardolf v. Weber*, 332 F.R.D. 467, 471-73 (S.D.N.Y. 2019), and *Canosa v. Ziff*, No. 18 Civ. 4115(PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019), to argue against dismissal. The *Geiss* court dismissed the section 1591 claims against the Weinstein Company Holdings, LLC ("TWC") and its officers and directors because the complaint failed to plead that Harvey Weinstein provided benefits to those defendants "because of" those defendants' facilitation of Mr. Weinstein's sexual misconduct. *Geiss*, 383 F. Supp. 3d at 169-70. *Ardolf* involved only claims under 18 U.S.C. § 1591(a)(1) against the person allegedly committing sex trafficking, not a claim under 18 U.S.C. § 1591(a)(2). *Ardolf*, 332 F.R.D. at 478-79. *Canosa*, another case involving Harvey Weinstein, involved allegations against TWC, including that the defendants facilitated meetings involving Mr. Weinstein and the Plaintiff with knowledge that sexual assaults would occur. *Canosa*, 2019 WL 498865, at *23-25. Here, Plaintiff includes no such allegations against Bowers or WBM.

Plaintiff also cites *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019). That case involved claims against owners of hotels used for sex trafficking and included specific allegations the Plaintiffs contended put the owner on notice of sex trafficking, including "an extraordinary number of used condoms," paying cash for rooms, requesting rooms near exits, and a significant number of men going into the same room each day. *Id*. at 962. That court concluded that the plaintiff's pleading included sufficient allegations, accepted as true, to state a claim that the hotel owners "should have known" sex trafficking took place in the hotel. As explained above, Plaintiff's allegations do not create a reasonable inference that, before the October 7, 2022 meeting, Bowers or WBM knew or should have known that Allen engaged in purported sex trafficking.

In sum, the Complaint does not include sufficient allegations to state a claim under 18 U.S.C. § 1595 against Defendants Bowers or WBM.

**B. Statute of Limitations**

Defendants argue the statute of limitations for state-law claims bars any remedy for conduct that occurred more than one year prior to Plaintiff's initiation of this action, i.e., conduct before May 11, 2022. Plaintiff responds that Defendants should be equitably estopped from asserting the statute of limitations as a defense, and that the statute of limitations should be tolled based on duress, the discovery rule, and continuous tort theory.

The defense of statute of limitations is an affirmative defense and can serve as a basis for dismissal under Rule 12(b)(6) only when the allegations in the complaint affirmatively show that *the claim* is time barred. *See Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Defendants do not argue that a specific claim must be dismissed based on the allegations in the Complaint, but rather argue that actions before May 11, 2022 cannot serve as a the basis for liability under Plaintiff's various tort claims. While those arguments may be appropriate at a later juncture, the Court will not dismiss any claim under the Rule 12(b)(6) standard based on the statute of limitations.

**C. Negligence Claims – Counts VI, VII, VIII, and X**

Plaintiff asserts four counts based on a negligence theory – Count VI (gross negligence), Count VII (negligence), Count VIII (negligent failure to warn, train, or educate), and Count X (negligent infliction of emotional distress). WBM and Bowers both argue that these counts must be dismissed as a matter of law, because Plaintiff did not plead facts to support a duty of care was owed to her by either of these defendants. Plaintiff alleges that WBM's and Bowers' hiring of her "created a special, confidential, and fiduciary relationship between Plaintiff and [those

9

Defendants]," resulting in a duty of care, that WBM and Bowers owed Plaintiff a "duty to use due care to ensure her safety and freedom from sexual harassment or abuse while interacting with WBM's clients," and that WBM and Bowers owed her "a duty to take reasonable protective measures to protect her from the risk of sexual harassment and abuse by Allen by properly warning, training, or educating Plaintiff about how to avoid such a risk." (Compl., Doc. No. 1, ¶¶ 90, 97, 104). Relying on *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005), Plaintiff argues that a duty of care can arise based on a number of factors. In *Biscan*, the Tennessee Supreme Court explained the circumstances under which a duty of care arises. First, "all persons have a duty 'to refrain from conduct that will foreseeably cause injury to others.'" *Id*. at 478 (citations omitted). "The general duty of care does not include an affirmative duty to act for the protection of another, however, unless the defendant stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger." *Id*. at 478-79 (internal quotation and citations omitted). To determine whether such a special relationship exists, the Court must weigh public policy considerations, which include consideration of the plaintiff's injuries and whether the manner in which they occurred was reasonably foreseeable. *Id*. (citing *Burroughs v. Magee*, 118 S.W.3d 323, 329 (Tenn. 2003)). The *Biscan* court noted that these considerations align with the balancing test generally applied to determine whether a defendant owes a duty of care to a plaintiff. *Id*. Those general considerations are:

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id*. at 478 (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

10

Case 3:23-cv-00477   Document 81   Filed 03/26/24   Page 10 of 13 PageID #: 606

Importantly, those factors, as acknowledged by WBM (Doc. No. 18-1 at 15-16) and Bowers (Doc. No. 38 at 15), consider reasonable foreseeability. At this juncture, the Court must accept Plaintiff's allegations as true and draw all reasonable inferences in her favor. Under that standard, Plaintiff has alleged sufficient facts to plead a duty of care; thus, Defendants' request to dismiss Counts VI, VII, VIII, and X on this basis is denied.

## D. Emotional Distress (Counts IX and X)

To be successful on a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must allege facts that if proven would establish "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn.2012). "The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation." *Id*. at 206. "In addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury." *Id*.

As for Defendants' arguments that Plaintiff fails to plead facts to satisfy the elements of a claim for intentional or negligent infliction of emotional distress, the Court disagrees. WBM argues that, as a corporation, it can only act through its agents and Plaintiff has not identified any conduct by WBM agents to sustain an emotional distress claim because Allen was not a WBM agent and Bowers did not engage in sufficiently outrageous conduct. Bowers echoes the argument that these claims must be dismissed because Plaintiff does not allege facts to show that he engaged in extreme and outrageous conduct.

Plaintiff responds that her claims for emotional distress are not based on a theory of vicarious liability for the actions of Allen. (*See* Doc. No. 42 at 25, n.15 (specifically declining to

11

address WBM's argument regarding WBM's relationship with Allen)). Plaintiff argues that her emotional distress claims against WBM are based on WBM's failure to take action to protect her from "outrageous conduct." In support of these claims, Plaintiff points to allegations that WBM and Bowers knew of Allen's pattern of sexual misconduct and had actual or constructive knowledge of Allen's conduct toward her and the severe effects of this conduct, and failed to take preventative action. (Doc. No. 42 at 24-25 ("Undoubtedly, WBM and Bowers were aware of Allen's continuous sexual abuse of Plaintiff over the course of 18 months and failed to act to protect her resulting in serious mental injuries."); *see also*, Doc. No. 43 at 22-23 (recounting allegations specific to Bowers)).

Plaintiff relies on *Pollard v. E.I. Dupont De Nemours, Inc.*, 412 F.3d 657 (6th Cir. 2005), for the proposition that, in some instances, liability for emotional distress torts may arise from inaction by an employer "in the face of outrageous conduct by persons under its immediate control who are causing serious harm within the general scope of employment and within the knowledge of its officials." Defendants assert *Pollard* is inapplicable because that case involved the employer's failure to prevent abusive conduct by the plaintiff's co-workers, whereas here Allen was a client, not an employee, and not under WBM's "immediate control."

But Plaintiff's allegations – specifically that Plaintiff (a WBM employee) handled Allen's schedules, promos, social media plans, press, marketing, and touring – suggest that WBM and Bowers had at least some control over Allen, particularly with respect to his interaction with Plaintiff. (Compl., Doc. No. 1, ¶¶ 25-26). While the factual record developed in discovery may clarify the WBM-Allen relationship, the Court cannot conclude that WBM and Bowers could not and did not control Allen's activities vis-à-vis Plaintiff. *See Pollard*, 412 F.3d at 664.

## IV. CONCLUSION

For the reasons stated, WBM's and Bowers' respective motions to dismiss will be **GRANTED** in part, and **DENIED** in part. The motions will be **GRANTED** as to Plaintiff's claims under 18 U.S.C. §§ 1591, 1595 (Count II), and **DENIED** as to all other claims.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE