UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:23-cv-00477 |
| | ) | |
| WILLIAMS BOWERS MANAGEMENT, LLC | ) | Judge Campbell |
| d/b/a WIDE OPEN MUSIC, ASH BOWERS, | ) | Magistrate Judge Frensley |
| and JOHN DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

---

## ANSWER AND AFFIRMATIVE DEFENSES

---

Pursuant to Federal Rule of Civil Procedure 12(a), Defendants Williams Bowers Management, LLC ("WBM")[1] and Ash Bowers (collectively, "Defendants") provide their Answer to Plaintiff's Verified Complaint.

## **ANSWER**

All allegations not expressly admitted are denied, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, or implications contained in Plaintiff's Verified Complaint. Defendants deny any allegations contained in headings, headers, or unnumbered paragraphs of Plaintiff's Verified Complaint. Defendants further state as follows in response to the Verified Complaint's corresponding numbered allegations:

---

[1] As set forth in WBM's Business Entity Disclosure, Wide Open Music is not the trade name (or assumed name) of Williams Bowers Management, LLC. [D.E. 19].

## INTRODUCTION

1.      Just out of college graduating magna cumme laude, Plaintiff landed her first day-to-day artist management position with Wide Open Music ("WOM"), an artist management company based in Nashville, Tennessee.    WOM and its founder Ash Bowers ("Bowers") promised to guide and teach Plaintiff about the music and talent management industries, the role of a day-to-day manager, and how to support WOM's clients.

**ANSWER:  Defendants deny any implication in this Paragraph that Plaintiff's first job out of college was working for WBM.  Defendants admit the remaining allegations in this Paragraph.**

2.      WOM assigned Plaintiff as the Day-to-Day Manager for WOM client Jimmie Allen ("Allen"), a multi-platinum recording artist and songwriter in country music.  Bowers was Allen's Principal Manager.  Plaintiff understood this assignment was the chance of a lifetime.

**ANSWER:  Defendants admit the first two sentences of this Paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the allegations in the third sentence of this Paragraph and therefore deny them.**

3.      At the time WOM assigned Plaintiff to work with Allen, Bowers warned Plaintiff that Allen was known to push inappropriate sexual boundaries.  Bowers advised Plaintiff that Allen was promiscuous but "harmless," implying that it was inevitable that Allen would make sexual advances on Plaintiff.    Bowers and other Wide Open Music staff treated Jimmie Allen's sexual harassment as normal.

**ANSWER:  Defendants deny that "Bowers warned Plaintiff that Allen was known to push inappropriate sexual boundaries."  Defendants admit that Bowers "advised Plaintiff that Allen was promiscuous but 'harmless'" (or stated something similar)**

2

**but deny he implied "that it was inevitable that Allen would make sexual advances on Plaintiff." Defendants deny the allegations in the third sentence of this Paragraph.**

4.       But it was not normal.  Rather, WOM knew that Allen was dangerous, and assigned Plaintiff to be his Day-to-Day Manager anyway.  WOM did not adequately warn or prepare Plaintiff for, or protect her from, the extreme sexual harassment, abuse, grooming, and manipulation she would endure in order to keep her job.

**ANSWER:  Denied.**

5.       Beginning in May 2020, during photoshoots, public appearances, and performances, when Plaintiff was representing WOM as Jimmie Allen's manager, Allen sexually harassed Plaintiff openly and publicly by making comments about her status as a single female, her innocence, and how hot she looked.   He did so from the stage, in front of the production crew and public audiences.   During debriefings after performances, Allen would ask Plaintiff personal sexual questions, including whether she was a virgin.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

6.       Plaintiff lacked knowledge and experience regarding sex and workplace behavior but relied on WOM's and Bowers' direction that this was normal and harmless behavior.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

7.       However, Allen's behavior was not harmless.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

8.     In March 2021, after filming an American Idol episode in which Allen appeared, Allen sexually assaulted Plaintiff, while she was incapacitated and incapable of giving consent.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

9.     Despite Plaintiff's subsequent attempts to decline Allen's sexual abuse and her outward expressions of extreme discomfort, Allen manipulated and used his power over Plaintiff's job to sexually harass and abuse her over the course of the next 18 months.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

10.    Bowers and WOM were aware of Allen's history and that it was likely happening to Plaintiff.  Plaintiff expressed that she was uncomfortable working with Allen, and at least one other third party reported Allen's inappropriate behavior with Plaintiff to WOM and Bowers. Nonetheless, neither WOM nor Bowers investigated whether and to what extent Allen was sexually abusing Plaintiff.   Instead, it was made clear to Plaintiff that she would lose her job if she complained.

**ANSWER:  Denied.**

11.    By October 2022, Plaintiff was severely depressed and anxious and had considered suicide as a result of Allen's conduct.  On October 4, 2022, Plaintiff sat down with Bowers, her boss, disclosed that she had been raped and sexually abused, told him she could not put up with Allen's abuse any longer, and asked that she be reassigned.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations in the first sentence of this Paragraph and therefore deny them.  Defendants admit the remaining allegations of this Paragraph.**

4

12. Rather than reassign her, WOM placed Plaintiff on leave and then fired her on October 26, 2022.

**ANSWER: Denied.**

13. Plaintiff brings this lawsuit for violations of 15 U.S.C. § 1591 (sex trafficking) against Jimmie Allen and Count II for violations of 15 U.S.C. § 1591, 1595 (participation in a venture engaged in sex trafficking) against WOM and Bowers, as well as claims under common law.

**ANSWER: These allegations are legal conclusions to which no response is required. To the extent a response is required, denied.**

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER: Admitted.**

15. Venue is proper in this District under 28 U.S.C. § 1391 (a)–(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District.

**ANSWER: Admitted.**

## PARTIES

16. Plaintiff is a citizen of the United States and resident of Williamson County, Tennessee.

**ANSWER: Admitted.**

17. Defendant Jimmie Allen is a citizen of the United States and resident of Tampa, Florida.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

18. Defendant Ash Bowers is a citizen of the United States and resident of Fairview, Tennessee.

**ANSWER: Admitted.**

19. Defendant Williams Bowers Management, LLC d/b/a Wide Open Music is a Tennessee corporation with its principal place of business located in Nashville, Tennessee.

**ANSWER: Defendants admit that WBM is a Tennessee Limited Liability Company but deny that WBM is a "corporation." Defendants admit the remaining allegations of this Paragraph.**

## FACTS

A. **WOM held Plaintiff out as an employee and controlled her daily work activities.**

20. In February 2020, Plaintiff was hired as a Day-to-Day Artist Manager at WOM. While WOM paid Plaintiff as an independent contractor, WOM otherwise treated her like an employee. WOM held Plaintiff out as an employee to the artists that WOM represented and held her out as a representative of the business.

**ANSWER: Defendants admit the allegations in the first sentence of this Paragraph. Defendants admit that WBM paid Plaintiff as an independent contractor but deny the remaining allegations in this Paragraph.**

21. WOM had the right to control the manner and means by which Plaintiff's role as an Artist Manager was accomplished, and she discussed how she would do so and received direction and input from her supervisor Bowers.

**ANSWER: Denied.**

22.     As a 2019 college graduate, Plaintiff's hiring by WOM in 2020 reflected her promise as an up-and-coming artist manager but also reflected that she did not have the experience to be an independent manager without the oversight of Bowers and WOM.  Bowers checked in with her daily to discuss the manner and methods by which she was to execute her responsibilities.

**ANSWER:  Denied.**

23.     WOM assigned Plaintiff as the Day-to Day Manager for music artist Jimmie Allen, with whom WOM had a contract.  Bowers was assigned as Allen's Principal Manager and thus Plaintiff's supervisor.

**ANSWER:  Admitted.**

24.     Plaintiff worked full-time for WOM, attending events where Allen had to appear or perform as WOM's representative and Day-to-Day Manager.  WOM required that Plaintiff handle, among other things, the planning and execution of Allen's publicity, global release schedules, promos, social media plans, press, marketing, and touring.

**ANSWER:  Defendants admit that Plaintiff worked full-time for WBM and attended events with Allen.  Defendants deny the remaining allegations in this Paragraph.**

25.     WOM had the right to assign Plaintiff additional projects.   Plaintiff did not have discretion over when and how long to work; she was required to support WOM's artist Jimmie Allen at all of his events and appearances and be on call at all times.   The work in which Plaintiff was engaged was the regular business of WOM.

**ANSWER:  Denied.**

26.     Plaintiff timely filed a Charge of Discrimination against WOM on March 28, 2023. She will update this lawsuit upon receipt of a Right to Sue letter to assert claims against WOM under Title VII and the Tennessee Human Rights Act.

**ANSWER:** **Defendants admit the allegations in the first sentence of this Paragraph. Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph and therefore deny them.**

B.     **WOM knew that Jimmie Allen regularly engaged in sexual harassment but required Plaintiff to work with him anyway.**

27.     In April 2020, Bowers introduced Plaintiff to Allen.

**ANSWER:** **Admitted.**

28.     In advance, Bowers warned Plaintiff that Allen could be challenging by pushing inappropriate boundaries. Bowers advised Plaintiff that Allen was promiscuous but "harmless," implying that it was inevitable that Allen would make sexual advances on Plaintiff. Bowers told Plaintiff that she could do it working as part of WOM's "team."

**ANSWER:** **Defendants deny that "Bowers warned Plaintiff that Allen was known to push inappropriate sexual boundaries." Defendants admit that Bowers "advised Plaintiff that Allen was promiscuous but 'harmless'" (or stated something similar) but deny he implied "that it was inevitable that Allen would make sexual advances on Plaintiff." Defendants deny the allegations in the third sentence of this Paragraph.**

29.     Plaintiff was also told that another WOM employee, formerly assigned as Jimmie Allen's Day-to-Day Manager, had been fired from Wide Open Music after she defended another woman who was the target of Jimmie Allen's sexual advances. (WOM later rehired her under a new iteration of WOM's publishing department).

**ANSWER:** **Defendants deny that Mr. Allen's former day-to-day manager was fired for "defending another woman who was the target of Mr. Allen's sexual advances." Defendants admit the allegations in the second sentence of this Paragraph.**

30. Bowers and other WOM employees treated Jimmie Allen's sexual harassment as normal.

**ANSWER: Denied.**

**C.** **WOM client Jimmie Allen openly and regularly sexually harassed and sexually assaulted Plaintiff; WOM was put on notice but did not protect her.**

31. Beginning in May 2020, during photoshoots, public appearances, and performances, when Plaintiff was representing WOM as Allen's manager, Allen sexually harassed Plaintiff openly and publicly by making comments about her status as a single female, her innocence, and how hot she looked. He did so from the stage, in front of the production crew and public audiences.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

32. During debriefings after performances, Allen would ask Plaintiff personal sexual questions, including whether she was a virgin. Plaintiff lacked knowledge and experience regarding sex and workplace behavior but relied on Bowers' direction that this was normal and harmless behavior.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

33. Over time, Allen progressed to touching and hugging Plaintiff, even though Plaintiff was uncomfortable. Despite her discomfort, Bowers often expressed his gratitude for Plaintiff's efforts and stated she was the cause of removing a great deal of pressure from him and WOM because she was able to handle Allen. Therefore, she continued to try to handle Allen's conduct professionally and respectfully.

**ANSWER: Defendants are without knowledge or information sufficient to form a**

9

**belief as to the allegations in this Paragraph and therefore deny them.**

34.     In March 2021, after filming an American Idol episode in which Allen appeared, Allen, Plaintiff, and industry executives attended a dinner.  While she only drank a couple of glasses of white wine, Plaintiff does not remember anything after dinner that evening—she lost consciousness and awoke naked in her hotel room several hours later, with Jimmie Allen insisting she take Plan B as soon as possible.  Plan B is emergency contraceptive that helps prevent pregnancy within 72 hours after unprotected sex.

      **ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

35.     Disoriented and confused, Plaintiff was bleeding vaginally.  Plaintiff felt mortified and humiliated.   She realized she had lost her virginity through no choice of her own and felt she had betrayed her faith.

      **ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

36.     Notwithstanding the disoriented and injured state Plaintiff was in, Allen insisted that Plaintiff go with him to the nearest drugstore to purchase Plan B.  After rushing to the drugstore and returning to the hotel, Allen opened the pack of Plan B and supervised Plaintiff while she took the medication.  Afterwards, Plaintiff started to leave.   On the way out, Allen grabbed her and forcibly kissed her goodbye, whispering, "You're mine now."  Plaintiff felt completely numb.

      **ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

37.     Plaintiff was terrified that if she reported Allen to Bowers, she would be terminated like the manager before her.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations that Plaintiff was "terrified" and therefore deny them. Defendants further deny that the referenced former manager was terminated for "defending another woman who was the target of Mr. Allen's sexual advances" (as referenced in Paragraph 29).**

38.     In April 2021, while at a filming, Allen opened a pornography website on Plaintiff's WOM-issued computer.  Shocked, she immediately closed the browser and shut the laptop.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

39.     However, Allen's hair and makeup assistant witnessed the incident and reported it to Plaintiff's supervisor, Bowers.

**ANSWER:  Defendants admit that someone reported to Bowers that Mr. Allen looked at pornography on a computer but do not recall who made that report. Defendants discussed the incident with Plaintiff, who stated that it was not of consequence because Mr. Allen "was just joking around."**

40.     Allen ensured the hair and makeup assistant was fired for being a "snitch." Thereafter, Allen required anyone that he hired to sign a non-disclosure agreement.

**ANSWER:  Defendants deny the allegations in the first sentence of this Paragraph because Mr. Allen did not employ the referenced hair and makeup assistant and therefore had no ability to "fire" her.  Defendants are without knowledge or**

**information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

41.     In May 2021, Allen told Plaintiff that his uncle said to him "I don't know why you're not hitting that every day," referring to Plaintiff.    Plaintiff reported this statement to Bowers.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations in first sentence of this Paragraph and therefore deny them. Defendants admit the allegations in the second sentence of this Paragraph.**

42.     Despite the fact that Allen's behavior was reported to Bowers by Allen's hair and makeup assistant and by Plaintiff, neither WOM nor Bowers took appropriate or sufficient action to protect Plaintiff.  Moreover, notwithstanding their knowledge of Allen's history of sexual harassment, neither WOM nor Mr. Bowers investigated to determine whether and to what extent Plaintiff was being harmed.

**ANSWER:  Denied.**

43.     Thereafter, Allen's sexual harassment of Plaintiff significantly increased, including grabbing her breasts or buttocks from behind or harassing her to engage in sexual conduct. Jimmie Allen put his hands down her pants in public.   When she tried to push him away, he held her down.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

44.     When Plaintiff drove Allen to and from events, he sexually abused her at red lights, in green rooms, on airplanes, and in other places she was required to be to support him at events. He raped her in private while choking her.   He videotaped multiple sexual encounters in order to

12

blackmail her to stay silent.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

45.    Plaintiff expressed in words and actions that Jimmie Allen's conduct was unwelcome, including pushing him away, sitting where he could not reach her, telling him she was uncomfortable and no, and crying uncontrollably.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

46.    However, Allen made clear that Plaintiff's job was dependent on her staying silent about his conduct.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

47.    On one occasion in July 2021, while Plaintiff was sitting in her WOM office, Plaintiff's distress was noticeably visible. Thus, Bowers and another WOM executive met with Plaintiff and asked if anything was wrong.  Plaintiff said that Allen was difficult to work with.

**ANSWER: Admitted.**

48.    Plaintiff's display of distress should have come as no surprise to WOM and Bowers given that they knew of Allen's pattern of sexual harassing women generally and Plaintiff specifically.   Nonetheless, neither WOM nor Mr. Bowers investigated to determine whether and to what extent Plaintiff was being harmed.

**ANSWER: Denied.**

49.    Instead, they told Plaintiff to limit her travel with Allen to essential trips, knowing this instruction was meaningless given the role of a day-to-day artist manager is to act as a

gatekeeper and frontman at the artist's events and appearances – making all such trips essential.

> **ANSWER:** Defendants admit that WBM and Bowers told Plaintiff to limit her travel with Allen to essential trips. Defendants deny the remaining allegations in this Paragraph.

50. Moreover, Bowers and WOM had made clear that Plaintiff was to tolerate Allen's misconduct. Given that WOM had fired Allen's prior Day-to-Day Manager for complaining, Plaintiff understood that her job was dependent on tolerating Allen's misconduct. However, no person should have to tolerate sexual harassment and sexual assault to maintain their job.

> **ANSWER:** Defendants deny the allegations in the first two sentences of this Paragraph. Defendants admit the allegations in the third sentence of this Paragraph.

51. On or around February 15, 2022, while in Honolulu, Hawaii, for WOM, Plaintiff almost collapsed on set (where she was representing Allen for WOM) and was rushed to the emergency room. Plaintiff spoke to the ER doctor and told him about the vicious cycle with Allen. The doctor advised Plaintiff to "run" and get far away from Allen, documenting the vaginal trauma on her person.

> **ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.

**D. WOM retaliated against Plaintiff for complaining about the sexual abuse.**

52. On or about March 6, 2022, Plaintiff sat down with her boss, Bowers, and began to tear up. Plaintiff explained how she felt humiliated by Allen.

> **ANSWER: Admitted.**

53. Bowers told Plaintiff that it would be best if she confronted Allen 1-on-1 and that Allen "would suffer" if she were to leave her job. Notwithstanding their knowledge of Allen's

history of sexual harassment, neither WOM nor Bowers investigated to determine whether and to what extent Plaintiff was being harmed. Nor did they take any action to protect Plaintiff.

**ANSWER:** **Defendants admit that Bowers told Plaintiff to meet with Mr. Allen, but deny the remaining allegations of this Paragraph.**

54.     Allen continued to sexually harass and assault Plaintiff. Throughout, Plaintiff became increasingly depressed and anxious. She felt she was on the verge of a nervous breakdown and considered committing suicide. She was pushed to her breaking point.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore deny them.**

55.     On October 4, 2022, Plaintiff sat down again with Bowers, told him she could not put up with Allen's abuse any longer, and asked that she be reassigned.

**ANSWER:** **Admitted.**

56.     Bowers scheduled a follow-up meeting with Plaintiff for October 7, 2022. During this meeting, which was attended by Plaintiff, Bowers, and another WOM employee, Plaintiff disclosed the details of Allen's abuse. During this discussion, Bowers stated, "I can't hear any more of this," and took a break.

**ANSWER:** **Admitted.**

57.     Later that day, on October 7, 2022, Bowers texted Plaintiff and told her that WOM was placing her on leave, she should not come into the office, and he had to think about his options.

**ANSWER:** **Admitted.**

58.     On or about October 17, 2022, Bowers texted Plaintiff stating, "[W]e are still unwinding things with Jimmie. Until that process is complete, we need you to continue to stay/work from home. We will update you once that's completed."

15

**ANSWER:  Admitted.**

59.     On or about October 24, 2022, Bowers sent Plaintiff a text message, scheduling a meeting at the office with her on October 26, 2022.

**ANSWER:  Admitted.**

60.     On October 26, 2022, at the in-office meeting, WOM terminated Plaintiff.

**ANSWER:  Denied that WBM "terminated" Plaintiff.  Rather, following the report by Plaintiff (October 2022), Defendants notified Mr. Allen that WBM was going to end its management contract with him.  During the subsequent weeks, Defendants tried to determine if there was sufficient other management business that could keep the business financially afloat.  Defendants also looked to see if there might be another opportunity for Plaintiff from other business.  Unfortunately, the business is small. WBM did not have another artist for Plaintiff to manage, and eventually laid Plaintiff off from her independent contractor position.  The company did not have another artist who could replace the business lost when it terminated the relationship with Mr. Allen.  WBM effectively ceased any major management responsibilities in late October/November 2022.  Unfortunately, the abruptness of the events did not allow WBM sufficient time to have an alternative business plan for replacement of this revenue.  Defendants believe Plaintiff will acknowledge this was the case at the time.**

CAUSES OF ACTION

COUNT I

VIOLATION OF 18 U.S.C. § 1591, 1595 (SEX TRAFFICKING)

(VERSUS JIMMIE ALLEN)

61.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as**

forth in the preceding paragraphs of their Answer.

62.     In violation of 18 U.S.C. § 1591, Jimmie Allen knowingly, in or affecting interstate or foreign commerce, recruited, enticed, or solicited Plaintiff knowing that means of force, threats of force, fraud, or coercion (or a combination thereof) would be used to cause Plaintiff to engage in any sex act on account of which anything of value would be given to or received by any person.

**ANSWER: Denied.**

63.     Jimmie Allen's actions knowingly affected interstate or foreign commerce, including through travel to states outside Tennessee with Plaintiff or at which he met Plaintiff for official events and during which he sexually assaulted and abused Plaintiff.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

64.     Allen recruited, enticed, or solicited Plaintiff by any means, including but not limited to by requiring her to perform her regular job activities (such as accompanying him to official events) during which he would sexually assault or abuse Plaintiff.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

65.     Allen knew he would use fraud, physical force, or coercion with Plaintiff for a sexual encounter.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

66.     Allen was well aware that the role as his Manager, or the chance to work for him directly, was of significant commercial value to Plaintiff. He used this value, or the prospective use of his influence on Plaintiff's behalf, to recruit and entice Plaintiff to private locations,

including his hotel room, home, car, and event locations, where he would perform sex acts.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

67.     By virtue of these violations of 18 U.S.C. § 1591, 1595, Jimmie Allen is liable to Plaintiff for the damages she sustained and reasonable attorneys' fees.

**ANSWER:  Denied.**

COUNT II

VIOLATION OF 18 U.S.C. § 1591, 1595 (PARTICIPATION IN A VENTURE ENGAGED IN SEX TRAFFICKING)
(AGAINST WOM AND BOWERS)

68.     Plaintiff incorporates by reference all preceding paragraphs, as if fully set forth herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

69.     18 U.S.C. § 1595 provides in pertinent part that an individual who is a victim of sex trafficking under 18 U.S.C. § 1591 may bring a civil action against "any person whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."

**ANSWER:  These allegations are legal conclusions to which no response is required. To the extent a response is required, denied.**

70.     First, as set forth above and in Count I, Jimmie Allen engaged in acts in violation of 18 U.S.C. § 1591.

**ANSWER:  These allegations are legal conclusions to which no response is required. To the extent a response is required, denied.**

71.     Second, as set forth above, each of WOM and Bowers knew or should have known that Allen was engaging in acts that constitute sex trafficking in violation of 18 U.S.C. § 1591 and was using WOM to facilitate those acts.

**ANSWER:  Denied.**

72.     Each of WOM and Bowers benefitted financially from their participation in the cover-up and venture because it ensured that Allen continued to perform, ensuring that WOM and Bowers continued to make money off Allen's stature and performances.

**ANSWER:  Denied.**

73.     18 U.S.C. § 1595 does not require that the benefactors of the venture knew or should have known of the specific victim that is bringing the suit.  Rather, it is sufficient that the Defendants knew or should have known that Allen had engaged in acts that constituted a violation of 18 U.S.C. § 1591.

**ANSWER:  These allegations are legal conclusions to which no response is required. To the extent a response is required, denied.**

74.     By virtue of these violations of 18 U.S.C. § 1591, 1595, Defendants are liable to Plaintiff for the damages she sustained and reasonable attorneys' fees.

**ANSWER:  Denied.**

### COUNT III
### BATTERY
### (AGAINST JIMMIE ALLEN)

75.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

19

76.    Allen intended to commit an act of unwanted contact and/or caused imminent apprehension of such an act against Plaintiff.  He did so by, *inter alia*: (a) isolating Plaintiff members in closed quarters and dismissing any bystanders; and (b) demanding or threatening sexual contact.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

77.    Allen did commit unwanted contact with Plaintiff's person or property in a harmful or offensive manner, including, but not limited to, causing sexual contact between Allen and Plaintiff.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

78.    Allen's battery of Plaintiff caused harm, including physical, mental, and/or emotional harm.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

79.    As a result of Allen's conduct, Plaintiff suffered damages.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

## COUNT IV
## ASSAULT
## (AGAINST JIMMIE ALLEN)

80.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

20

81.     Allen intended to cause apprehension of harmful or offensive conduct against Plaintiff. He did so by, *inter alia*: (a) isolating Plaintiff in closed quarters and dismissing any bystanders; (b) demanding or threatening sexual contact; (c) cornering, blocking, or otherwise using his heft to cause Plaintiff to fear that Allen had the ability to carry out his physical threats; and (d) threatening harm to the career and reputation of Plaintiff if she did not participate in such conduct.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

82.     Allen's actions did, in fact, cause Plaintiff to fear imminent harmful or offensive contact by Allen.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

83.     As a result of Allen's conduct, Plaintiff suffered damages.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

**COUNT V**
**FALSE IMPRISONMENT**
**(AGAINST JIMMIE ALLEN)**

84.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

85.     Without her consent, Plaintiff was willfully detained by Allen while he battered, assaulted, and attempted to assault her.

**ANSWER:  Defendants are without knowledge or information sufficient to form a**

**belief as to these allegations and therefore deny them.**

86.     Allen willfully detained Plaintiff through physical force and/or through intimidation.  In many instances, Allen used such intimidation that Plaintiff stopped resisting rather than risk injury or death.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

87.     As a result of Allen's conduct, Plaintiff suffered damages.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to these allegations and therefore deny them.**

**COUNT IV**

**GROSS NEGLIGENCE**

**(AGAINST WOM AND BOWERS)**

88.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

89.     WOM and Bowers owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual harassment or abuse while interacting with their clients.

**ANSWER:  Denied.**

90.     Plaintiff's acceptance of WOM's offer to join its artist management team, including seeking out guidance and direction from WOM and Bowers in the course of his employment, agency, and/or representation of WOM, created a special, confidential, and fiduciary relationship between Plaintiff and Bowers, and between Plaintiff and WOM, resulting in WOM and Bowers owing Plaintiff a duty to use due care.

**ANSWER:  Denied.**

91.     WOM and Bowers' failure to adequately supervise its client Jimmie Allen or Allen's interactions with Plaintiff, especially after WOM and Bowers knew or should have known of complaints regarding Allen's sexual harassment and abuse to other WOM employees and third parties, as well as Plaintiff, was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

**ANSWER:  Denied.**

92.     WOM and Bowers' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

**ANSWER:  Denied.**

93.     WOM and Bowers' conduct, as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

**ANSWER:  Denied.**

94.     WOM and Bowers breached duties owed to Plaintiff and were grossly negligent when they conducted themselves as described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

**ANSWER:  Denied.**

95.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff was damaged.

**ANSWER:  Denied.**

## COUNT VII
## NEGLIGENCE
## (AGAINST WOM AND BOWERS)

96.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

**ANSWER:** Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.

97.     WOM and Bowers owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual harassment or abuse while interacting with WOM's clients.

**ANSWER:** Denied.

98.     WOM and Bowers' negligence in supervising Allen and Allen's interactions with Plaintiff, especially after WOM and Bowers knew or should have known of complaints regarding his sexual harassment and abuse, was a substantial factor in causing harm to Plaintiff.

**ANSWER:** Denied.

99.     WOM and Bowers' conduct demonstrated a negligent disregard for precautions to ensure Plaintiff's safety.

**ANSWER:** Denied.

100.    WOM and Bowers' conduct demonstrated a negligent disregard for substantial risks to Plaintiff.

**ANSWER:** Denied.

101.    WOM and Bowers breached duties owed to Plaintiff and were negligent when they conducted themselves as described above, said acts having been committed with disregard for Plaintiff's health, safety, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

**ANSWER:** Denied.

102.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff was damaged.

**ANSWER:** Denied.

## COUNT VIII
## NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE
## (AGAINST WOM AND BOWERS)

103.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

104.     WOM and Bowers owed Plaintiff a duty to take reasonable protective measures to protect her from the risk of sexual harassment and abuse by Allen by properly warning, training, or educating Plaintiff about how to avoid such a risk.

**ANSWER:  Denied.**

105.     WOM and Bowers breached their duty to take reasonable protective measures to protect Plaintiff from the risk of sexual harassment and abuse by Allen, such as the failure to properly warn, train or educate Plaintiff about how to avoid such a particular risk that Allen posed of sexual misconduct.

**ANSWER:  Denied.**

106.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff was damaged.

**ANSWER:  Denied.**

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST WOM, BOWERS, AND ALLEN)

107.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

108. WOM's, Bower's, and Allen's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

**ANSWER:  Denied.**

109. WOM's, Bower's, and Allen's outrageous conduct was not the type of ordinary rude or obnoxious behavior that women should be expected to weather.  Rather, WOM's, Bower's, and Allen's conduct exceeded all possible bounds of decency.

**ANSWER:  Denied.**

110. WOM, Bowers, and Allen acted with intent or recklessness, knowing that Plaintiff was likely to endure emotional distress.

**ANSWER:  Denied.**

111. Indeed, they used this distress to subdue and explicitly or implicitly threaten Plaintiff to remain silent or lose her job and to prevent her from complaining or suing based on their actions.  They did so with deliberate disregard as to the high possibility that severe emotional distress would occur.

**ANSWER:  Denied.**

112. WOM, Bowers, and Allen's conduct caused suffering for Plaintiff at levels that no reasonable person should have to endure.

**ANSWER:  Denied.**

## COUNT X
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST WOM, BOWERS, AND ALLEN)

113. Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

**ANSWER:  Defendants incorporate and re-allege their answers to each allegation as forth in the preceding paragraphs of their Answer.**

26

114. WOM, Bowers, and Allen's conduct negligently caused emotional distress to Plaintiff.

**ANSWER: Denied.**

115. Defendants could reasonably foresee that their actions would have caused emotional distress to Plaintiff.

**ANSWER: Denied.**

116. WOM, Bowers, and Allen's conduct caused suffering for Plaintiff at levels that no reasonable person should have to endure.

**ANSWER: Denied.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court enter judgment for Plaintiff and against Defendants, award her compensatory, incidental, consequential, and punitive damages, award her reasonable attorneys' fees and costs, and grant such other and further relief as this Court deems appropriate.

**ANSWER: Denied.**

## AFFIRMATIVE DEFENSES

Defendants assert the following Affirmative Defenses to the claims raised in Plaintiff's Verified Complaint. Defendants do not assume the burden of proof on these defenses where substantive law provides otherwise.

### First Affirmative Defense
(Failure to State a Claim)

Plaintiff's claims are barred in whole or in part because the Verified Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense
(Statute of Limitations)

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations.

### Third Affirmative Defense
(Consent)

Plaintiff's claims are barred in whole or in part because Plaintiff agreed to, and participated in, those actions which Plaintiff claims to have caused injury or damage. Because such participation and consent were given knowingly and voluntarily, Plaintiff's claims are invalid.

### Fourth Affirmative Defense
(Failure to Mitigate)

Plaintiff's claims are barred in whole or in part by Plaintiff's failure to mitigate her alleged damages, including, among other things, failing to tell Defendants about Allen's alleged abuse until at least October 4, 2022.

### Fifth Affirmative Defense
(Comparative Fault of Third Parties)

Plaintiff's claims are barred in whole or in part because persons or entities other than Defendants caused or contributed to Plaintiff's alleged injuries. Therefore, any award Plaintiff may receive in this case must be divided so that Defendants only pay their fair share in relationship

to their amount of fault.

### Sixth Affirmative Defense
(Modified Comparative Fault)

Plaintiff's claims are barred in whole or in part by the doctrine of modified comparative fault. Because Plaintiff's percentage of the fault is not less than Defendants' percentage of the fault, her claims are barred in whole. If Plaintiff's percentage of the fault is not determined to be less than Defendants' percentage of the fault, Plaintiff's recovery, if any, must be reduced in accordance with Plaintiff's percentage of the fault.

### Seventh Affirmative Defense
(Assumption of the Risk)

Plaintiff's claims are barred in whole or in part by Plaintiff's assumption of the risk. By, among other things, engaging in a consensual sexual relationship with Mr. Allen and not disclosing any alleged abuse to Defendants until at least October 4, 2022, Plaintiff assumed the risk of any damages she claims to have incurred.

### Eighth Affirmative Defense
(Laches)

Plaintiff's claims are barred in whole or in part because Plaintiff unreasonably delayed bringing this lawsuit despite both actual and constructive knowledge of her alleged injuries, which caused Defendants prejudice.

### Ninth Affirmative Defense
(Intervening / Supervening Cause)

Plaintiff's claims are barred in whole or in part because a new, independent, and unforeseen cause intervened to cause Plaintiff's alleged injuries, which Defendants could not have reasonably foreseen.

29

### Tenth Affirmative Defense
(No Duty)

Plaintiff's claims are barred in whole or in part because Defendants owed Plaintiff no legal duty.

### Eleventh Affirmative Defense
(Not Foreseeable)

Plaintiff's claims are barred in whole or in part because her alleged injuries were not reasonably foreseeable to Defendants.

### Twelfth Affirmative Defense
(Unclean Hands)

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

### Thirteenth Affirmative Defense
(Punitive Damages)

Defendants deny that Plaintiff is entitled to any relief, including an award of compensatory or punitive damages. If damages are awarded, however, Defendants as defenses any statutory limitation on damages, including Tenn. Code Ann. §§ 29-39-102 and 29-39-104, and any constitutional limitation on punitive damages, including the Due Process clause of the Fourteenth Amendment.

### Fourteenth Affirmative Defense
(Adequate Warning, Training, and Education)

Plaintiff's claims are barred in whole or in part because Defendants adequately warned, trained, and educated Plaintiff.

### Fifteenth Affirmative Defense
(Lack of Causation)

Plaintiff's claims are barred in whole or in part because there was no causal connection between any of Defendants' alleged actions and Plaintiff's alleged injuries.

**Sixteenth Affirmative Defense**
(Lack of Proximate Cause)

Plaintiff's claims are barred in whole or in part because there was no proximate causal connection between any of Defendants' alleged actions and Plaintiff's alleged injuries.

**Reservation of Affirmative Defenses**

Defendants have not knowingly or intentionally waived any applicable affirmative defenses and reserve the right to assert and rely on such other applicable affirmative defenses as may become available or apparent during the proceedings. Defendants further reserve the right to amend their affirmative defenses accordingly, or to delete affirmative defenses they determine are not applicable during the course of subsequent discovery.

Dated:        April 23, 2024                    Respectfully submitted,

**NEAL & HARWELL, PLC**

/s/  *William J. Harbison II*
Aubrey B. Harwell, III (BPR # 17394)
William J. Harbison II (BPR # 33330)
Olivia R. Arboneaux (BPR # 40225)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
tharwell@nealharwell.com
jharbison@nealharwell.com
oarboneaux@nealharwell.com

*Counsel for Defendants Bowers and WBM*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2024, a true and correct copy of the foregoing has been

served on the following via the Court's electronic filing system:

FEGAN SCOTT LLC
Elizabeth A. Fegan (admitted *pro hac vice*)
130 S. Wacker Drive, 24th Floor
Chicago, IL 60606
(312) 264-0100
beth@feganscott.com

SPRAGENS LAW PLC
John T. Spragens (BPR # 31445)
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900
john@spragenslaw.com

*Counsel for Plaintiff*

/s/ *William J. Harbison II*
William J. Harbison II

33